ORIGINAL



FILED
DEC 12 2014
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

SEALED BY COURT ORDER

1  Anthony M. Keats (SBN 123672)
   akeats@stubbsalderton.com
2  Konrad K. Gatien (SBN 221770)
   kgatien@stubbsalderton.com
3  Vivian S. Lee (SBN 273274)
   vlee@stubbsalderton.com
4  STUBBS ALDERTON & MARKILES, LLP
   1453 3rd St. Promenade, Suite 300
5  Santa Monica, California 90401
   Telephone:   (310) 746-9800
6  Facsimile:   (310) 746-9820

7  Attorneys for Plaintiffs
   LOUIS VUITTON MALLETIER, S.A.,
8  CÉLINE, S.A., and CHRISTIAN DIOR, S.A.

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

SC

| | |
|---|---|
| LOUIS VUITTON MALLETIER, S.A., a *société anonyme* duly organized and existing under the laws of France; CÉLINE, S.A., a *société anonyme* duly organized and existing under the laws of France; and CHRISTIAN DIOR, S.A., a *société anonyme* duly organized and existing under the laws of France;<br><br>Plaintiffs,<br><br>v.<br><br>GLAMORA BY SADIA, an unknown business entity; SADIA BARRAMEDA, an individual; and JOHN DOES 1 to 10, inclusive,<br><br>Defendants. | Case No. CV 14 5421<br><br>**DOCUMENT FILED UNDER SEAL**<br><br>**COMPLAINT FOR:**<br><br>1. **FEDERAL TRADEMARK COUNTERFEITING AND INFRINGEMENT (15 U.S.C. §§ 1114-1117);**<br>2. **FEDERAL FALSE DESIGNATION OF ORIGIN AND FALSE DESCRIPTION (15 U.S.C. § 1125(a));**<br>3. **FEDERAL COPYRIGHT INFRINGEMENT (17 U.S.C. § 501);**<br>4. **FEDERAL TRADEMARK DILUTION (15 U.S.C. § 1125(c));**<br>5. **STATE STATUTORY UNFAIR COMPETITION (Cal. Bus. & Prof. Code § 17200,** *et seq.***);**<br>6. **STATE TRADEMARK DILUTION (Cal. Bus. & Prof. Code § 14247);**<br>7. **COMMON LAW UNFAIR COMPETITION; and,**<br>8. **CONSTRUCTIVE TRUST (Cal. Civ. Code § 2224).**<br><br>**DEMAND FOR JURY TRIAL** |

COMPLAINT

ORIGINAL

Plaintiffs LOUIS VUITTON MALLETIER, S.A. ("Louis Vuitton"), CÉLINE, S.A. ("Céline"), and CHRISTIAN DIOR, S.A. ("Dior"), (collectively, "Plaintiffs"), complain of Defendants GLAMORA BY SADIA ("Glamora"), SADIA BARRAMEDA ("Barrameda"), and JOHN DOES 1 to 10, inclusive, (collectively, "Defendants"), as follows:

## STATEMENT OF THE CASE

1. This is an action for injunctive relief and damages under the Lanham Act, Copyright Act, and state and common law based on Defendants' offering for sale of counterfeit handbags and accessories that infringe Plaintiffs' famous trademarks and copyrights.

## JURISDICTION AND VENUE

2. This Court has subject matter jurisdiction over Plaintiffs' federal trademark counterfeiting and infringement, false designation of origin, copyright infringement, and trademark dilution claims pursuant to 15 U.S.C. § 1121, 17 U.S.C. § 101, *et seq.*, 28 U.S.C. §§ 1331, 1332 and 1338.

3. This Court has subject matter jurisdiction over the claims in this action that arise under the laws of the State of California pursuant to 28 U.S.C. § 1367(a), since the state law claims are related to and arise from the same set of facts as Plaintiffs' federal claims.

4. This Court has personal jurisdiction over Defendants because Defendants do business within this judicial district, and the acts complained of occurred in this judicial district.

5. Venue in this district is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to Plaintiffs' claims occurred in this district.

## THE PARTIES

6. Plaintiff LOUIS VUITTON MALLETIER, S.A. is a *société anonyme* duly organized and existing under the laws of the Republic of France, with its principal place of business in Paris, France, and operates as a subsidiary of LVMH Moët Hennessy Louis Vuitton, S.A ("LVMH"). Louis Vuitton is a luxury goods company and is the sole and exclusive distributor in the United States of leather goods bearing the Louis Vuitton trademarks, which are exclusively manufactured in France, Spain and San Dimas, California. Louis Vuitton is engaged in the manufacture, sale and distribution in interstate and foreign commerce of prestigious high quality, luxury merchandise,

including a wide variety of luggage, handbags, trunks, garment bags, wallets, small leather goods and other similar items sold throughout the United States in company owned boutiques and high quality retail stores such as Saks Fifth Avenue and Neiman Marcus.

7. Plaintiff CÉLINE, S.A. is a *société anonyme* duly organized and existing under the laws of the Republic of France, with its principal place of business in Paris, France, and operates as a subsidiary of LVMH. Céline is a luxury goods company and is the sole and exclusive distributor in the United States of goods bearing the Céline trademarks. Céline is engaged in the manufacture, sale and distribution in interstate and foreign commerce of prestigious high quality, luxury merchandise, including a wide variety of leather goods, apparel, accessories, shoes, and other similar items sold throughout the United States in company owned boutiques and high quality retail stores such as Barneys New York and Saks Fifth Avenue.

8. Plaintiff CHRISTIAN DIOR, S.A. is a *société anonyme* duly organized and existing under the laws of the Republic of France, with its principal place of business in Paris, France, and operates as a subsidiary of LVMH. Dior is a luxury goods company and is the sole and exclusive distributor in the United States of goods bearing the Dior trademarks. Dior is engaged in the manufacture, sale and distribution in interstate and foreign commerce of prestigious high quality, luxury merchandise, including a wide variety of leather goods, apparel, accessories, shoes and other similar items sold throughout the United States in company owned boutiques and high quality retail stores such as Barneys New York and Saks Fifth Avenue.

9. Plaintiffs are informed and believe, and thereupon allege, that Defendant GLAMORA BY SADIA is a business entity of unknown origin, having its principal place of business at 2475 Sand Creek Road, Suite 112, Brentwood, California 94513. Glamora is a seller of counterfeit handbags and accessories along with other fashion products. Glamora is importing, advertising, distributing, offering for sale and/or selling handbags and accessories within this judicial district and the State of California.

10. Plaintiffs are informed and believe, and thereupon allege, that at all times relevant hereto Defendant SADIA BARRAMEDA, individually and doing business as the owner of Defendant Glamora by Sadia, has been and is doing business in this judicial district and the State of

1  California. Defendant Barrameda has been and is distributing, offering for sale and/or selling
2  handbags and accessories in California and in this judicial district via her principal place of business
3  located at Glamora by Sadia, 2475 Sand Creek Road, Suite 112, Brentwood, California 94513.
4  Defendant Barrameda, by virtue of her position as the owner of defendant Glamora by Sadia, directs
5  and controls the infringing activity of Glamora complained of herein.

6      11.    Plaintiffs are informed and believe, and thereupon allege, that at all times relevant
7  hereto, Defendants John Does 1-10 are employees, officers, managers and/or directors of named
8  Defendant Glamora, which has been and is doing business in this judicial district and the State of
9  California. The John Doe Defendants, by virtue of their relationship to the named Defendants, have
10 been and are advertising, distributing, offering for sale and/or selling handbags and accessories
11 including without limitation the handbags and accessories at issue in this action in California and in
12 this judicial district via the named Defendants' principal place of business and other channels of
13 commerce and places of business as yet unknown to Plaintiffs. The John Doe Defendants, by virtue
14 of their relationship to the named Defendants direct, control, contribute, and/or otherwise participate
15 in the infringing activity complained of herein. Due to the nature of the named Defendants and their
16 business practices, the identities of the various John Does are not presently known, and the
17 Complaint herein will be amended, if appropriate, to include the name(s) of said individuals and/or
18 entities when such information becomes available.

19 **PLAINTIFFS' RIGHTS**

20 **Louis Vuitton and the Louis Vuitton Trademarks and Copyrights**

21     12.    Plaintiff Louis Vuitton was founded in 1854 by Louis Vuitton in Paris, France, when
22 he began making trunks and luggage. Since its inception, Louis Vuitton has expanded its line of
23 high-end luxury goods to produce leather goods (including handbags, wallets, and accessories),
24 ready-to-wear fashion, shoes, watches, jewelry, sunglasses, and books. Louis Vuitton has brought
25 extraordinary designs to consumers worldwide, combining technical innovation with quintessential
26 style that aims for perfection. Louis Vuitton is one of the largest manufacturers and distributors of
27 high-end handbags in the world in terms of the number of units sold as well as one of the largest
28 sellers of high-end handbags in the United States.

3

13.     Louis Vuitton is the owner of famous registered trademarks including the LOUIS VUITTON word mark, the "LV" design mark, the Toile Monogram design mark, the Damier design mark, the S-Lock design mark, and the Flower design marks, (collectively, the "Louis Vuitton Trademarks"), which are used in association with a variety of leather handbags and accessories.

14.     The Louis Vuitton Trademarks, which are registered with the U.S. Patent and Trademark Office ("USPTO") and are relevant to this action, are listed in a table along with true and correct copies of the U.S. Registration Certificates for the Louis Vuitton Trademarks attached hereto as **Exhibit 1**. The Louis Vuitton Trademark registrations are in full force and effect and many have become incontestable pursuant to 15 U.S.C. § 1065.

15.     The registration of the Louis Vuitton Trademarks constitutes *prima facie* evidence of their validity and conclusive evidence of Louis Vuitton's exclusive right to use the Louis Vuitton Trademarks in connection with the goods identified therein and other commercial goods, and is sufficient notice to Defendants of Louis Vuitton's ownership and exclusive rights in and to the Louis Vuitton Trademarks pursuant to 15 U.S.C. § 1115(a).

16.     Louis Vuitton owns copyrights to the Monogram Multicolor print designs, which are registered with the U.S. Copyright Office (the "Louis Vuitton Copyrighted Prints"). The copyright registrations relevant to this action are listed in the table along with true and correct copies of the U.S. Copyright Registration Certificates attached hereto as **Exhibit 2**.

17.     The registration of the Louis Vuitton Copyrighted Prints constitutes *prima facie* evidence of the validity of the copyrights and the facts stated in the certificates pursuant to 17 U.S.C. § 410(c).

18.     Louis Vuitton is the only authorized manufacturer and distributor of genuine Louis Vuitton products. In the United States, Louis Vuitton products are sold exclusively through Louis Vuitton stores and the Louis Vuitton U.S. Website, available at http://us.louisvuitton.com/. Louis Vuitton is the exclusive distributor of goods bearing the Louis Vuitton Trademarks and/or Louis Vuitton Copyrighted Prints in the United States.

19.     Louis Vuitton has developed an outstanding reputation in its Louis Vuitton Trademarks because of the uniform high quality of Louis Vuitton products. The Louis Vuitton

1  Trademarks identify a unique level of high quality products originating with Louis Vuitton.

2  20.  Louis Vuitton spends millions of dollars each year on extensive print, media, and
3  trade advertising for products bearing the Louis Vuitton Trademarks.

### Céline and the Céline Trademarks

21.  Plaintiff Céline, founded in 1945 and owned by LVMH since 1996, is a modern luxury brand offering a collection of leather goods, ready-to-wear clothing, shoes, and accessories. Céline is well known for its iconic Trapeze and Luggage handbags, which are essential parts of the Céline collection. Céline offers consumers creative, high quality, and functional products for women searching for a distinctive style and strong vision.

22.  Plaintiff Céline is the owner of its famous registered trademarks, including the CÉLINE word marks, (the "Céline Trademarks").

23.  The Céline Trademarks, which are registered with the USPTO and relevant to this action, are listed in a table along with true and correct copies of the U.S. Registration Certificates for the Céline Trademarks attached hereto as **Exhibit 3**. The Céline Trademark registrations are in full force and effect and have become incontestable pursuant to 15 U.S.C. § 1065, as further evidenced by the registration certificates.

24.  The registration of the Céline Trademarks constitutes *prima facie* evidence of their validity and conclusive evidence of Céline's exclusive right to use the Céline Trademarks in connection with the goods identified therein and other commercial goods, and is sufficient notice to Defendants of Céline's ownership and exclusive rights in and to the Céline Trademarks pursuant to 15 U.S.C. § 1115(a).

25.  Céline is the only authorized manufacturer and distributor of genuine Céline products. In the United States, Céline products are sold exclusively through Céline stores and select high-end department stores, such as Barneys New York and Saks Fifth Avenue. Céline has developed an outstanding reputation for its Céline Trademarks because of the uniform high quality and innovation of its Céline products.

26.  Céline spends millions of dollars each year on extensive print, media and trade advertising for products bearing the Céline Trademarks.

## Christian Dior and the Dior Trademarks

27. Christian Dior is a luxury goods company that was founded in 1946 by the eponymous designer, Christian Dior. Christian Dior revolutionized women's fashion in the middle of the 20th Century when he curated designs with unique silhouettes, lengths, and volumes. Critics noted that he had created "quite a revolution" and that his fashions had "such a new look." Christian Dior's contributions to fashion were and still are highly recognized and regarded; notably, he was the first couturier to make the cover of Time Magazine in March 1957. Internationally acclaimed actresses and public figures, including Marlene Dietrich, Ava Gardner, Elizabeth Taylor, and Princess Diana, have worn Dior fashions. After Christian Dior's death in 1981, the Dior fashion house was acquired by a business entity, which later took a large equity stake in LVMH, effectively merging the entities together. Dior produces a wide variety of luxury goods, including leather goods, fashion accessories, haute couture fashion, ready-to-wear fashion, footwear, and jewelry, timepieces, which it sells through its high-end boutiques in the U.S. and worldwide.

28. Christian Dior is the owner of its famous registered trademarks, including the CHRISTIAN DIOR and DIOR word and design marks, (collectively, the "Dior Trademarks").

29. The Dior Trademarks, which are registered with the USPTO and are relevant to this action, are listed in the table along with true and correct copies of the U.S. Registration Certificates for the Dior Trademarks attached hereto as **Exhibit 4**. The Dior Trademark registrations are in full force and effect and many have become incontestable pursuant to 15 U.S.C. § 1065, as further evidenced by the registration certificates.

30. The registration of the Dior Trademarks constitutes *prima facie* evidence of their validity and conclusive evidence of Dior's exclusive right to use the Dior Trademarks in connection with the goods identified therein and other commercial goods, and is sufficient notice to Defendants of Dior's ownership and exclusive rights in and to the Dior Trademarks pursuant to 15 U.S.C. § 1115(a).

31. Dior is the only authorized manufacturer and distributor of genuine Dior products. In the United States, Dior products are sold exclusively through Dior stores and select high-end department stores, such as Barneys New York and Saks Fifth Avenue.

32. Dior has developed an outstanding reputation in its Dior Trademarks because of the uniform high quality of Dior products.

33. Dior spends millions of dollars each year on extensive print, media, and trade advertising for products bearing the Dior Trademarks.

34. The Louis Vuitton Trademarks, Céline Trademarks, and Dior Trademarks are collectively referred to herein as "Plaintiffs' Trademarks." Plaintiffs' Trademarks and the Louis Vuitton Copyrighted Prints are collectively referred to herein as "Plaintiffs' Intellectual Property."

### DEFENDANTS' COUNTERFEITING AND INFRINGING ACTIVITIES

35. Long after Plaintiffs' adoption and use of Plaintiffs' Intellectual Property on handbags and accessories, and long after federal registration of their trademarks and copyrights, Defendants, upon information and belief, commenced the advertising, distribution, offering for sale, and sale of merchandise bearing counterfeits and/or infringements of Plaintiffs' Intellectual Property (hereinafter referred to as the "Counterfeit and/or Infringing Goods" or "Defendants' Infringing Goods") as shown in the U.S. Trademark Registrations and U.S. Copyright Registrations owned by Plaintiffs for the same types of merchandise sold by Defendants. True and correct copies of photographs of exemplars of the Defendants' Counterfeit and/or Infringing Goods are attached hereto as **Exhibit 5**.

36. On information and belief, the activities of Defendants complained of herein constitute willful and intentional infringement of Plaintiffs' Intellectual Property, are in total disregard of Plaintiffs' rights, and were commenced and have continued in spite of Defendants' knowledge that the use of any of Plaintiffs' Intellectual Property, or a copy or a colorable imitation thereof, was and is in direct contravention of Plaintiffs' rights. Neither Plaintiffs, nor any authorized agents thereof, have consented to Defendants' use of any of Plaintiffs' Intellectual Property, including Plaintiffs' Trademarks or the Louis Vuitton Copyrighted Prints.

37. The use by Defendants of copies of Plaintiffs' Intellectual Property has been without the consent of Plaintiffs, is likely to cause confusion and mistake in the minds of the purchasing public and, in particular, tends to and does falsely create the impression that the goods sold by Defendants are authorized, sponsored, or approved by Plaintiffs when, in fact, they are not.

38. Plaintiffs have no adequate remedy at law and are suffering irreparable harm and damages as a result of the acts of Defendants as aforesaid in an amount thus far not determined.

## FIRST CLAIM FOR RELIEF

**(Federal Trademark Counterfeiting and Infringement, all Plaintiffs against all Defendants)**

**[15 U.S.C. §§ 1114-1117]**

39. Plaintiffs incorporate all prior allegations as if set forth fully herein.

40. Defendants have used in commerce spurious marks that are identical with or substantially indistinguishable from the federally registered Plaintiffs' Trademarks in connection with Defendants' advertising, distribution, offering for sale and/or sale of Defendants' Counterfeit and/or Infringing Goods to the consuming public in direct competition with Plaintiffs.

41. Defendants have counterfeited and/or infringed Plaintiffs' Trademarks. Defendants' use of Plaintiffs' Trademarks in connection with Defendants' Counterfeit and/or Infringing Goods was and is without Plaintiffs' authorization or consent.

42. Defendants' advertising, distribution, offering for sale and/or sale of Defendants' Counterfeit and/or Infringing Goods has and is subjecting consumers to confusion in that consumers are likely to purchase Defendants' Counterfeit and/or Infringing Goods falsely believing that Defendants and/or Defendants' Counterfeit and/or Infringing Goods are affiliated, connected, or associated with Plaintiffs, or falsely believing that Defendants and or Defendants' Counterfeit and/or Infringing Goods originate from, or are sponsored or approved by Plaintiffs, when they are not.

43. Defendants' conduct exploits the goodwill and reputation associated with Plaintiffs and Plaintiffs' registered Trademarks.

44. Plaintiffs have no control over the quality of Defendants' Counterfeit and/or Infringing Goods. Because of the very real likelihood of confusion as to the source of Defendants' Counterfeit and/or Infringing Goods, Plaintiffs' reputation and valuable goodwill in their trademarks are subject to Defendants' unscrupulous tactics.

45. Defendants' activities as aforesaid create the false and misleading impression that Defendants are sanctioned, authorized and/or licensed by Plaintiffs to use Plaintiffs' Trademarks in

connection with Defendants' Counterfeit and/or Infringing Goods, when Defendants are not so authorized.

46. The pricing of Defendants' Counterfeit and/or Infringing Goods, as well as their acts of offering discounts, create the false and misleading impression that Defendants are sanctioned, authorized and/or licensed by Plaintiffs to use Plaintiffs' Trademarks in connection with Defendants' Counterfeit and/or Infringing Goods when Plaintiffs do not offer their genuine goods through unauthorized retailers and do not discount their products. Such actions by Defendants are not authorized.

47. Defendants' unauthorized use of Plaintiffs' Trademarks as set forth above has resulted in Defendants unfairly benefiting from Plaintiffs' advertising and promotion, and profiting from Plaintiffs' reputation and their registered trademarks, and the substantial goodwill represented thereby.

48. Defendants' unauthorized use of Plaintiffs' Trademarks on or in connection with Defendants' Counterfeit and/or Infringing Goods was done with notice and full knowledge that such use was not authorized or licensed by Plaintiffs. Defendants' actions constitute willful counterfeiting and/or infringement of Plaintiffs' Trademarks in violation of 15 U.S.C. §§ 1114, 1116(d), and 1117(b)-(c).

49. Defendants' acts of counterfeiting and/or infringement as alleged herein have been willfully undertaken with knowledge of Plaintiffs' exclusive rights to Plaintiffs' Trademarks, entitling Plaintiffs to an award of treble Defendants' profits, plus attorneys' fees and costs in bringing and maintaining this action, pursuant to 15 U.S.C. § 1117(b), or alternatively, of statutory damages pursuant to 15 U.S.C. § 1117(c).

50. Monetary relief alone, however, is not adequate to address fully the irreparable injury that Defendants' wrongful acts have caused and will continue to cause Plaintiffs if such acts are not enjoined by this Court. Plaintiffs are, therefore, entitled to preliminary and permanent injunctive relief to stop Defendants' unauthorized acts.

///

///

9

COMPLAINT

## SECOND CLAIM FOR RELIEF

**(False Designation of Origin and False Description, all Plaintiffs against all Defendants)**

**[15 U.S.C. § 1125(a)]**

51. Plaintiffs incorporate all prior allegations as if set forth fully herein.

52. This claim arises under the provisions of the Trademark Act of 1946, 15 U.S.C. § 1051, *et seq.*, particularly under 15 U.S.C. § 1125(a), and alleges the use in commerce of false designations of origin and false descriptions and representations.

53. Defendants have affixed, applied, or used in connection with their sale of goods, false designations of origin and false descriptions and representations, including words or other symbols that tend falsely to describe or represent such goods and have caused such goods to enter into commerce with full knowledge of the falsity of such designations of origin and such descriptions and representations, all to the detriment of Plaintiffs. In particular, the sale by Defendants of goods incorporating counterfeits and/or infringements of Plaintiffs' Trademarks constitutes false descriptions and representations tending falsely to describe or represent goods sold by Defendants.

54. Upon information and belief, Defendants have sold handbags and accessories bearing counterfeit and/or infringing copies of Plaintiffs' Trademarks with the express intent to cause confusion and mistake, to deceive and mislead the purchasing public, to trade upon the reputation of Plaintiffs, and to improperly appropriate the valuable trademark rights of Plaintiffs.

55. Plaintiffs have suffered injury as a result of Defendants' unauthorized acts.

56. By Defendants' aforesaid unauthorized conduct, Defendants have infringed and are likely to continue to infringe on Plaintiffs' rights in Plaintiffs' Trademarks. In doing so, Defendants have represented and designated falsely to the public generally, and to relevant consumers specifically, the source of origin of Plaintiffs' Trademarks in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

57. Plaintiffs are informed and believe, and thereupon allege, that Defendants' infringement is both intentional and egregious entitling Plaintiffs to an award of treble Defendants' profits, plus attorneys' fees and costs in bringing and maintaining this action, pursuant to 15 U.S.C.

1 § 1117.

58. Monetary relief alone, however, is not adequate to address fully the irreparable injury that Defendants' wrongful acts have caused and will continue to cause Plaintiffs if such acts are not enjoined by this Court. Plaintiffs are, therefore, entitled to preliminary and permanent injunctive relief to stop Defendants' unauthorized acts.

### THIRD CLAIM FOR RELIEF

**(Federal Copyright Infringement, Plaintiff Louis Vuitton against all Defendants)**

**[17 U.S.C. § 501]**

59. Plaintiff incorporates all prior allegations as if set forth fully herein.

60. At all relevant times, Plaintiff Louis Vuitton has owned the rights, title, and interest in and to the Louis Vuitton Copyrighted Prints as delineated in **Exhibit 2** herein.

61. Plaintiff Louis Vuitton has complied in all respects with Title 17 of the United States Code, secured the exclusive rights and privileges in and to the above referenced copyrights, and in compliance with the law, has received from the Registrar of Copyrights the appropriate certificates of registration, which constitute *prima facie* evidence of the validity of the copyrights and of the facts stated in the certificates.

62. After the dates of registration of the above referenced copyrights and continuing to date, Defendants have infringed the Louis Vuitton Copyrighted Prints by advertising, distributing, offering for sale, and/or selling, without Plaintiff Louis Vuitton's consent, Defendants' Infringing Goods, which are copies of or bear a substantial similarity to the Louis Vuitton Copyrighted Prints.

63. Defendants' unauthorized acts constitute infringement of Plaintiff Louis Vuitton's exclusive rights to reproduce, prepare derivative works, distribute and/or sell such goods bearing the Louis Vuitton Copyrighted Prints pursuant to 17 U.S.C. §§ 106 and 501.

64. Upon information and belief, said conduct by Defendants is without consent or authorization, and was and is willful, intentional, and purposeful in disregard of and with indifference to Plaintiff Louis Vuitton's rights.

65. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff Louis Vuitton is entitled to damages in an amount to be proven at trial.

66. Plaintiff Louis Vuitton is also entitled to Defendants' profits attributable to the infringement, pursuant to 17 U.S.C. § 504(b), including an accounting of and constructive trust with respect to such profits, or statutory damages pursuant to 15 U.S.C. § 504(c).

67. Plaintiff Louis Vuitton is also entitled to its attorneys' fees and costs pursuant to 17 U.S.C. § 505 and otherwise according to law.

68. As a direct and proximate result of the foregoing acts and conduct, Plaintiff Louis Vuitton has sustained and will continue to sustain substantial, immediate, and irreparable injury for which there is no adequate remedy at law. Unless and enjoined and restrained by this Court, Defendants will continue to infringe Plaintiff Louis Vuitton's rights in the Copyrighted Prints. Plaintiff Louis Vuitton is entitled to preliminary and permanent injunctive relief to stop Defendants' unauthorized acts.

## FOURTH CLAIM FOR RELIEF

### (Federal Trademark Dilution, all Plaintiffs against all Defendants)

### [15 U.S.C. § 1125(c)]

69. Plaintiffs incorporate all prior allegations as if set forth fully herein.

70. Plaintiffs are the exclusive owners of the Louis Vuitton, Céline, and Dior Trademarks, respectively.

71. Defendants' use of the Louis Vuitton, Céline, and Dior Trademarks on Defendants' Infringing Goods constitutes Defendants' use in commerce of the Louis Vuitton, Céline, and Dior Trademarks.

72. Based on Plaintiffs' extensive sales, marketing, and advertising of Plaintiffs' Trademarks, Plaintiffs' Trademarks have become distinctive and famous pursuant to 15 U.S.C. § 1125(c).

73. The nearly identical style, look, and overall visual appearance of Defendants' Infringing Goods, as well as Defendants' efforts to pass off their products as being made, marketed, sponsored, licensed or otherwise approved by Plaintiffs, are eroding the distinctiveness of the famous Louis Vuitton, Céline, and Dior Trademarks.

74. Defendants' use of Plaintiffs' Trademarks began only after such marks became

famous.

75. Defendants' actions have caused dilution of Plaintiffs' Trademarks by lessening the capacity of the marks to identify and distinguish Plaintiffs' goods.

76. Plaintiffs are threatened with injury through this dilution of their trademark rights, as well as immediate and direct injury to their name, image, and business reputations.

77. Plaintiffs are informed and believe, and thereupon allege, that Defendants have willfully intended to trade on Plaintiffs' reputation and/or to cause dilution of Plaintiffs' famous marks.

78. Plaintiffs have no adequate remedy at law. The conduct of Defendants has caused, and if not enjoined will continue to cause, Plaintiffs irreparable harm and damage to their trademarks and common law trademarks and to Plaintiffs' businesses, reputations, and goodwill.

## FIFTH CLAIM FOR RELIEF

**(State Statutory Unfair Competition, all Plaintiffs against all Defendants)**

**[Cal. Bus. & Prof. Code §§ 17200, *et seq.*]**

79. Plaintiffs incorporate all prior allegations as if set forth fully herein.

80. Plaintiffs are the owners of all rights, title, and interest in the Louis Vuitton, Céline, and Dior Trademarks, respectively.

81. Plaintiffs state, upon information and belief, and thereupon allege, that Defendants have intentionally appropriated one or more of the Louis Vuitton, Céline, and Dior Trademarks with the intent of causing confusion, mistake, and deception as to the source of their goods with the intent to palm off their goods as those of Plaintiffs and to place others in the position to palm off their goods as those of Plaintiffs.

82. Plaintiffs state, upon information and belief, and thereupon allege, that Defendants' actions, including those specifically complained of herein, with respect to Defendants' misappropriation of Plaintiffs' Trademarks in connection with counterfeits of Louis Vuitton, Céline, and Dior's products, have violated the unfair competition laws of the State of California, specifically California Business and Professions Code §§ 17200, *et seq.*

83. Plaintiffs have no adequate remedy at law. The conduct of Defendants has caused,

and if not enjoined will continue to cause, Plaintiffs irreparable harm and damage to Plaintiffs' Trademarks and to Plaintiffs' businesses, reputations, and goodwill.

### SIXTH CLAIM FOR RELIEF

### (State Statutory Trademark Dilution, all Plaintiffs against all Defendants)

### [Cal. Bus. & Prof. Code § 14247]

84. Plaintiffs incorporate all prior allegations as if set forth fully herein.

85. Plaintiffs state, upon information and belief, and thereupon allege, that Defendants' acts have caused a likelihood of injury to Plaintiffs' goodwill and business reputations, impaired the effectiveness of Plaintiffs' Trademarks, and diluted Plaintiffs' distinctive trademarks. Defendants' use of the nearly identical style, look, and overall visual appearance of Defendants' Infringing Goods, as well as their efforts to pass-off their products as being made, marketed, sponsored, licensed or otherwise approved by Plaintiffs, is likely to cause an erosion of the distinctiveness of Plaintiffs' trademarks and common law trademarks and in the overall style, look, and feel of Plaintiffs' products.

86. Plaintiffs state, upon information and belief, and thereupon allege, that Defendants' acts, including those specifically complained of herein, have caused dilution of Plaintiffs' trademark and common law trademark rights by, among other things, lessening the capacity of such rights to identify and distinguish Plaintiffs in violation the trademark laws of the State of California, and specifically California Business and Professions Code § 14247.

87. Plaintiffs have no adequate remedy at law. The conduct of Defendants has caused and, if not enjoined will continue to cause, irreparable damage to Plaintiffs' rights in and to their trademarks, and to Plaintiffs' businesses, reputations, and goodwill.

### SEVENTH CLAIM FOR RELIEF

### (State Common Law Unfair Competition, all Plaintiffs against all Defendants)

88. Plaintiffs incorporate all prior allegations as if set forth fully herein.

89. Plaintiffs are the owners of all right, title, and interest in and to Plaintiffs' Trademarks used by Plaintiffs by virtue of their extensive manufacture and sale of products bearing such trademarks (collectively, Plaintiffs' "common law trademarks"), as set forth in the preceding

paragraphs of this Complaint. In particular, because of their enormous sales and publicity, Plaintiffs have acquired common law trademark rights in and to the Louis Vuitton, Céline, and Dior Trademarks for their products.

90. The counterfeit and/or infringing products advertised, distributed, offered for sale and/or sold by Defendants incorporate matter constituting replicas and imitations of Plaintiffs' common law trademarks. Such unauthorized use by Defendants of Plaintiffs' common law trademarks constitutes trademark infringement and unfair competition, and is likely to cause confusion and mistake in the minds of the trade and the purchasing public as to the source of the products, and to cause purchasers to believe such products are authentic products of Plaintiffs when, in fact, they are not.

91. Upon information and belief, Defendants have willfully and intentionally misappropriated one or more of Plaintiffs' common law trademarks with the intent of causing confusion, mistake, and deception as to the source of their goods and with the intent to palm off their goods as those of Plaintiffs and to place others in the position to palm off their goods as those of Plaintiffs, and, as such, Defendants have committed trademark infringement and unfair competition under the common law.

92. By such actions in infringing Plaintiffs' common law trademarks, Defendants are improperly trading upon the enviable reputation and goodwill of Plaintiffs and are impairing Plaintiffs' valuable rights in and to such trademarks.

93. Plaintiffs are informed and believe, and thereupon allege, that Defendants committed the acts alleged above oppressively, fraudulently, maliciously, and in conscious disregard of Plaintiffs' rights, and Plaintiffs are therefore entitled to exemplary and punitive damages pursuant to the common law of the State of California in an amount sufficient to punish, deter, and make an example of Defendants.

94. Plaintiffs have no adequate remedy at law. The conduct of Defendants has caused and, if not enjoined will continue to cause, irreparable damage to Plaintiffs' rights in and to their trademarks, and to Plaintiffs' businesses, reputations, and goodwill.

///

## EIGHTH CLAIM FOR RELIEF

### (Constructive Trust, all Plaintiffs against all Defendants)

### [Cal. Civ. Code § 2224]

95. Plaintiffs incorporate all prior allegations as if set forth fully herein.

96. Plaintiffs state, upon information and belief, and thereupon allege, that Defendants own and/or possess tangible real and/or personal properties and assets including, but not limited to, shares of stock, bank, savings, and/or other financial accounts, real property consisting of and/or obtained by profit derived from Defendants' unauthorized, distribution, and/or sale of counterfeit and/or infringing products.

97. Plaintiffs are entitled to the profits Defendants have derived from the counterfeiting, infringement, and dilution of Plaintiffs' Trademarks under 15 U.S.C. §§ 1114 and 1125, *et seq.*, as well as the profits from the infringement of the Louis Vuitton Copyrighted Prints under 17 U.S.C. § 504.

98. Plaintiffs have no adequate remedy at law and have suffered irreparable harm and damage as a result of Defendants' aforementioned wrongful acts. Defendants hold those tangible real and/or personal properties and assets consisting of and/or obtained by profit derived from Defendants' infringing activities as constructive trustees for the benefit of Plaintiffs in an amount thus far not determined.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs demand judgment against Defendants as follows:

99. That the Court order that Defendants, their agents, servants, employees, representatives, successors, and assigns, and all persons, firms, or corporations in active concert or participation with any of Defendants, be immediately enjoined from:

    a. directly or indirectly infringing Plaintiffs' Intellectual Property as described above in any manner including generally, but not limited to, copying, distributing, advertising, selling, and/or offering for sale any merchandise that infringes Plaintiffs' Intellectual Property, including without limitation Defendants' Counterfeit and/or Infringing Goods, and specifically

|   |   |
|---|---|
| 1 | distributing, advertising, selling, and/or offering for sale unauthorized copies |
| 2 | of Plaintiffs' Intellectual Property or any other unauthorized goods that |
| 3 | picture, reproduce, or utilize the likenesses of or which copy or bear a |
| 4 | substantial similarity to any of Plaintiffs' Intellectual Property; |

b.  engaging in any conduct that tends falsely to represent that, or is likely to confuse, mislead, or deceive purchasers, Defendants' customers, and/or members of the public to believe that the actions of Defendants, the Counterfeit and/or Infringing Goods sold by Defendants, or Defendants themselves are connected with Plaintiffs, are sponsored, approved, or licensed by Plaintiffs, or are in some way connected or affiliated with Plaintiffs;

c.  affixing, applying, annexing, or using in connection with the manufacture, distribution, advertising, sale, and/or offering for sale or other use of any goods or services, a false description or representation, including words or other symbols, tending to falsely describe or represent such goods as being those of Plaintiffs;

d.  otherwise competing unfairly with Plaintiffs in any manner;

e.  diluting and infringing the Louis Vuitton, Céline, and Dior Trademarks and damaging Plaintiffs' goodwill, reputations, and businesses;

f.  during the pendency of this action, moving, hiding, altering or destroying Defendants' Counterfeit and/or Infringing Goods that are in Defendants' possession or control;

g.  during the pendency of this action, destroying any documents, electronic files or business records that pertain to the copying, reproduction, manufacture, duplication, dissemination, or distribution of any of Defendants' Counterfeit and/or Infringing Goods manufactured, distributed, advertised, sold and/or offered for sale by Defendants or under Defendants' authority, including any correspondence (including, but not limited to, electronic mail), sales and

|   |   |   |
|---|---|---|
| 1 |   | supplier or customer journals, ledgers, invoices, purchase orders, inventory |
| 2 |   | control documents, bank records, catalogues, recordings of any type |
| 3 |   | whatsoever, and all other business records and documents believed to |
| 4 |   | concern the manufacture, purchase, advertising, sale, offering for sale, or |
| 5 |   | proceeds from the sale of such infringing copies; and |
| 6 | h. | effecting assignments or transfers, forming new entities or associations or |
| 7 |   | utilizing any other device for the purpose of circumventing or otherwise |
| 8 |   | avoiding the prohibitions set forth in subparagraphs a-g, above. |

100. That the Court issue an order directing the United States Marshal or other law enforcement officers to enter Defendants' premises identified hereinabove, namely, 2475 Sand Creek Road, Suite 112, Brentwood, California 94513, and/or around the premises of any warehouses, vehicles, other storage containers, or other locations controlled by any of the Defendants, or their employees, agents, servants or representatives as may become known or may be apparent from evidence seized from the above-listed locations, and that Plaintiffs and/or their designees be authorized to seize the following items which are in Defendants' possession, custody, or control:

    a.    all computers, including all peripherals and storage devices (including without limitation hard drives, floppies, CDs, DVDs, and removable media, data cartridges and/or other backup media), located in Defendants' premises which embody or contain records relating to the sale of Defendants' Counterfeit and/or Infringing Goods, or computers which were used to commit any of the infringing acts complained of herein;

    b.    any other matter or material in any media embodying any unauthorized copies of Plaintiffs' Intellectual Property or any other evidence of infringement, including, but not limited to, disks, tapes, electronic mails, documents, or software;

    c.    all goods and counterfeit marks involved in the violation of Plaintiffs' Trademarks, and the means of making such marks, and records documenting

STUBBS ALDERTON & MARKILES, LLP
1453 3RD ST. PROMENADE
SUITE 300
SANTA MONICA, CALIFORNIA 90401