IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| LOUIS VUITTON MALLETIER, S.A.; CÉLINE, S.A.; and CHRISTIAN DIOR, S.A., | ) ) ) | Case No. CV 14-05421 SC |
| | ) | DOCUMENT FILED UNDER SEAL |
| Plaintiffs, | ) ) | ORDER GRANTING EX PARTE MOTIONS FOR TEMPORARY RESTRAINING |
| v. | ) ) | ORDER, ORDER TO SHOW CAUSE, SEIZURE ORDER, AND EXPEDITED |
| GLAMORA BY SADIA; SADIA BARRAMEDA; et al., | ) ) | DISCOVERY |
| | ) | |
| Defendants. | ) ) | |
| | ) ) ) ) | |

## I.  **INTRODUCTION**

Now pending before the Court are Plaintiffs Louis Vuitton Malletier, S.A., Céline, S.A. ("Louis Vuitton"), and Christian Dior, S.A.'s ex parte motions for a temporary restraining order, an order to show cause, an order freezing Defendants' assets, and expedited discovery.  The Court has reviewed Plaintiffs' motion papers and held an ex parte hearing on December 12, 2014.  Because Plaintiffs moved ex parte and the record in this matter is sealed, Defendants were not heard.  For the reasons set forth below, Plaintiffs' motions for a temporary restraining order, order to

show cause, seizure order, and expedited discovery are GRANTED.
Plaintiffs' motion for seizure of Defendants' assets is DENIED.

## II.  BACKGROUND

The plaintiffs in this case are all French fashion companies that make, among other things, accessories such as handbags.  Each is the sole authorized manufacturer and distributor of its respective products in the United States.  Declaration of John Maltbie ("Maltbie Decl.") ¶¶ 8, 23, 39.  Plaintiffs own the following federally registered trademarks:

**Louis Vuitton Trademarks**

| | |
|---|---|
| LV (and pattern design) | 0,297,594 |
| LV (and pattern design) | 2,399,161 |
| LV (and pattern design) | 4,192,541 |
| Interlocking "LV" Design | 1,519,828 |
| Interlocking "LV" Design | 1,794,905 |
| Interlocking "LV" Design | 2,361,695 |
| Interlocking "LV" Design | 4,614,736 |
| LOUIS VUITTON | 1,045,932 |
| LOUIS VUITTON | 3,904,444 |
| LOUIS VUITTON | 1,990,760 |
| LOUIS VUITTON | 4,530,921 |
| LOUIS VUITTON PARIS | 2,346,373 |
| Damier (Design) | 3,576,404 |
| S-Lock (Design) | 3,617,909 |
| Flower (Design) | 2,773,107 |
| Flower (Design) | 2,177,828 |
| Flower (Design) | 2,181,753 |

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

**Céline Trademarks**

CÉLINE (Design)                          1,000,156

CELINE                                   1,744,898

**Dior Trademarks**

Dior (Design)                            1,923,564

CHRISTIAN DIOR                           0,543,994

CHRISTIAN DIOR                           1,829,995

CHRISTIAN DIOR (Design)                  1,816,812

Dior (Design)                            2,749,176

Dior (Design)                            3,731,629

DIOR (Design)                            4,362,717

(respectively, the "Louis Vuitton Trademarks," "Céline Trademarks," and "Dior Trademarks," and  collectively referred to herein as the "Plaintiffs' Trademarks").  Additionally, Plaintiff Louis Vuitton owns the following copyrights:

**Louis Vuitton Copyrights**

[Multicolor monogram--white print]: no. A31024    VA0001250120
Multicolor monogram--white print /
    by Takashi Murakami                          VA0001365645

(collectively, the "Louis Vuitton Copyrighted Prints").

Defendant Sadia Barrameda is the owner of Defendant Glamora by Sadia ("Glamora"), a store in Brentwood, California.  Declaration of Anthony M. Keats of December 10, 2014 ("Keats Decl. I") ¶ 10, Ex. 3; Declaration of Kris Buckner ("Buckner Decl.") ¶ 20.  Ms. Barrameda describes herself as a "modern day royal gypsy" whose grandfather rules the Philippine island of Mindanao as "Sultanate" and whose mother is a Mindanaoan princess.  Keats Decl. Ex. 4.

Since 2012, Plaintiffs have investigated Glamora because they

United States District Court
For the Northern District of California

believed it to be selling counterfeit Louis Vuitton, Céline, and Christian Dior products.  Buckner Decl. ¶¶ 8-9.  On three separate occasions between March 6, 2012 and April 23, 2012, Plaintiffs' investigators visited Glamora and purchased or observed Louis Vuitton products at the store.  Id. ¶¶ 9-17.  Plaintiffs examined the purchased items and determined that they were inferior in quality to genuine Louis Vuitton goods.  Specifically, Plaintiffs found that the packaging, care cards, materials, stitching, and dust bags of the goods sold at Glamora were inconsistent genuine Louis Vuitton products.  Maltbie Decl. ¶¶ 13-14, 17.  Additionally, the placement of the Louis Vuitton Trademarks on the Glamora products did not match the placement on genuine Louis Vuitton products.  Id. ¶ 17.  Plaintiffs thus determined that the products were counterfeit.  Id. ¶¶ 13-14.

On August 13, 2012, Plaintiffs' investigators again visited Glamora and again observed Louis Vuitton products for sale.  Buckner Decl. ¶ 18.  During the same visit, the investigators delivered a cease and desist letter to a Glamora employee.  They also spoke to Ms. Barrameda on the phone.  Ms. Barrameda confirmed that she owned the store and denied knowledge of selling any counterfeit merchandise.  The investigators prompted her to surrender the allegedly counterfeit items, but she refused.  Id. ¶¶ 18-20, Ex. 1.

Over the next two years, investigators continued to visit Glamora.  They observed or purchased a number of Louis Vuitton, Céline, and Christian Dior products at the store during five more visits, with the most recent occurring on October 9, 2014.  Id. ¶¶ 21-30.  Plaintiffs determined that these products were counterfeit

**United States District Court**
For the Northern District of California

1  as well.  Maltbie Decl. ¶¶ 13-14, 28-29, 44-45.  The Céline
2  products sold at Glamora had colorways, interiors, stitching,
3  materials, care cards, hangtags, and dust bags that were
4  inconsistent with the genuine items.  Id. ¶ 32.  The Dior products
5  sold at Glamora had materials, interiors, hardware, packaging, and
6  quality that were inconsistent with genuine Dior products.
7  Additionally, the placement of the Dior marks was inconsistent with
8  genuine products.  Plaintiffs brought this lawsuit under seal on
9  December 10, 2014 for trademark infringement, false designation of
10 origin, copyright infringement, and related state and common law
11 claims.  They move ex parte for a temporary restraining order,
12 order to show cause, seizure order, expedited discovery, and an
13 order freezing Defendants' assets.

14

15 **III.  LEGAL STANDARD**

16      Federal Rule of Civil Procedure 65(b) permits the issuance of
17 a temporary restraining order ("TRO") to preserve the positions of
18 the parties until a motion for preliminary injunction can be set
19 for hearing.  Fed. R. Civ. P. 65(b)(2).  The standard for a TRO is
20 the same as for a preliminary injunction.  Rovio Entm't Ltd. v.
21 Royal Plush Toys, Inc., 907 F. Supp. 2d 1086, 1092 (N.D. Cal.
22 2012).  To warrant injunctive relief, a plaintiff must establish
23 (1) that he is likely to succeed on the merits of his action; (2)
24 that he is likely to suffer irreparable harm in the absence of
25 preliminary relief; (3) that the balance of equities tip in his
26 favor; (4) and that an injunction is in the public interest.
27 Winter v. Natural Res. Def. Council, 129 S. Ct. 365, 374 (2008).
28 Within the Ninth Circuit, these elements "are balanced, so that a

**United States District Court**
For the Northern District of California

stronger showing of one element may offset a weaker showing of
another." Alliance for the Wild Rockies v. Cottrell, 632 F.3d
1127, 1131 (9th Cir. 2011).  Thus, where the Plaintiff's proof of
likelihood of success is limited to raising "serious questions
going to the merits," but the balance of hardships tips sharply in
Plaintiff's favor, a temporary restraining order may be
appropriate.  Id.

    The Ninth Circuit has held that there are "very few"
circumstances justifying the issuance of an ex parte TRO.  Reno Air
Racing Ass'n, Inc. v. McCord, 452 F.3d 1126, 1131 (9th Cir.2006).
In trademark cases, an ex parte TRO may be justified where "an
alleged infringer is likely to dispose of the infringing goods
before the hearing." Rovio, 907 F. Supp. 2d at 1094 (quoting Reno
Air, 452 F.3d at 1131).  The party applying for a TRO "must do more
than assert that the adverse party would dispose of evidence if
given notice." Reno Air, 452 F.3d 1126, 1131.  Often, the
applicant must show that "defendants would have disregarded a
direct court order and disposed of the goods within the time it
would take for a hearing . . . [and the applicant] must support
such assertions by showing that the adverse party has a history of
disposing of evidence or violating court orders or that persons
similar to the adverse party have such a history." Id. (quoting
First Tech. Safety Sys., Inc. v. Depinet, 11 F.3d 641, 650 (6th
Cir. 1993)).
///
///
///
///

**United States District Court**
For the Northern District of California

1   IV.  **DISCUSSION**

2        A.   **Temporary Restraining Order**

3        As described above, a court's decision to grant a TRO is

4   governed by four factors: (1) whether the applicant is likely to

5   succeed on the merits of his action; (2) whether the applicant is

6   likely to suffer irreparable harm in the absence of preliminary

7   relief; (3) that the balance of equities tip in the applicant's

8   favor; (4) and that an injunction is in the public interest.  The

9   Court discusses each in turn.

10             1.   **Likely to Succeed on the Merits**

11        "To establish a trademark infringement claim under section 32

12   of the Lanham Act or an unfair competition claim under section

13   43(a) of the Lanham Act, [Plaintiffs] must establish that

14   [Defendants are] using a mark[s] confusingly similar to a valid,

15   protectable trademark[s] of [Plaintiffs]."  Brookfield Commc'ns,

16   Inc. v. W. Coast Entm't Corp., 174 F.3d 1036, 1046 (9th Cir. 1999).

17   Registration of a trademark constitutes prima facie evidence of the

18   mark's validity.  15 U.S.C. § 1115; Applied Info. Scis. Corp. v.

19   eBay, Inc., 511 F.3d 966, 970 (9th Cir. 2007).  In deciding whether

20   marks are confusingly similar, courts in the Ninth Circuit consider

21   eight factors: (1) strength of the mark; (2) proximity of the

22   goods; (3) similarity of the marks; (4) evidence of actual

23   confusion; (5) marketing channels used; (6) type of goods and the

24   degree of care likely to be exercised by the purchaser; (7)

25   defendant's intent in selecting the mark; and (8) likelihood of

26   expansion of the product lines.  AMF Inc. v. Sleekcraft Boats, 599

27   F.2d 341, 348-49 (9th Cir. 1979).  "However, in cases involving

28   counterfeit marks, it is unnecessary to perform the step-by-step

examination . . . because counterfeit marks are inherently confusing." Phillip Morris USA Inc. v. Shalabi, 352 F. Supp. 2d 1067, 1073 (C.D. Cal. 2004) (internal quotation marks omitted).

The Court finds that Plaintiffs' registrations constitute prima facie evidence that their trademarks are valid and protectable. The Court also finds that it is likely that Defendants sold products bearing marks confusingly similar to Plaintiffs' Marks. Defendants likely sold products bearing imitations of Plaintiffs' Marks, which Defendants purported to be genuine versions of Plaintiffs' products and marks. Indeed, when challenged, Defendants repeatedly insisted that the counterfeit products were genuine. Buckner Decl. ¶¶ 15-16, 20, 22, 24. Accordingly, the Court finds that Plaintiffs are likely to succeed on the merits of their trademark infringement and unfair competition claims. This factor weighs very strongly in favor of issuing a TRO.

### 2. Likelihood of Irreparable Harm

To demonstrate the likelihood of irreparable harm, Plaintiffs must show that "remedies available at law, such as monetary damages, are inadequate to compensate for the injury." Herb Reed Enters., LLC v. Fl. Entm't Mgmt., Inc., 736 F.3d 1239, 1249 (9th Cir. 2013) cert. denied, 135 S. Ct. 57 (2014) (internal quotation marks omitted). The Ninth Circuit has recognized that "intangible injuries," including loss of goodwill, can constitute "possible irreparable harm." Rent-A-Ctr., Inc. v. Canyon Television & Appliance Rental, Inc., 944 F.2d 597, 603 (9th Cir. 1991). More specifically, the sale of counterfeited products may cause irreparable harm because such sale may "prevent [Plaintiffs] from

**United States District Court**
For the Northern District of California

controlling the reputation of [their] highly recognizable" brands. CytoSport, Inc. v. Vital Pharm., Inc., 617 F. Supp. 2d 1051, 1081 (E.D. Cal. 2009) aff'd, 348 F. App'x 288 (9th Cir. 2009).

Here, Plaintiffs allege several types of irreparable harm. Plaintiffs' claim that they have spent significant time, money, and effort developing reputations for producing high-quality luxury goods. Because Defendants' counterfeit goods are of an inferior quality, Plaintiffs fear that Defendants' sale of those goods will permanently damage Plaintiffs' reputation for quality and workmanship. Maltbie Decl. ¶¶ 15, 18, 24, 30, 33, 36, 46, 49. Plaintiffs also point out that this case is somewhat unusual in that Defendants are not vendors who sell goods extremely cheaply to buyers who likely knew the goods were counterfeit. Instead, Plaintiffs allege that Defendants sold the goods at high prices -- but slightly below the retail prices of the genuine articles -- to trick consumers into believing they were buying the real items at a discount. Id. ¶¶ 9, 13, 15, 17, 22, 24, 25, 27, 30. Thus, Plaintiffs argue, it is more likely that customers will confuse Defendants' counterfeit products for legitimate ones.

The Court recognizes that there is some threat to Plaintiffs' reputation and business goodwill that may merit immediate injunctive relief. However, there are also reasons to be skeptical. Plaintiffs' brands are well-known and at least one (Louis Vuitton) has existed for more than 150 years. Plaintiffs assert that all three brands have "outstanding reputation[s]." Maltbie Decl. ¶¶ 4-5, 9, 20, 24, 35-36, 40. Given the history and strength of Plaintiffs' brands, it is somewhat difficult to believe that a single small business poses a serious threat to Plaintiffs'

1   reputations.   Therefore, the Court concludes that <u>some</u> irreparable
2   harm to Plaintiffs is likely, but that harm is unlikely to be
3   devastating to Plaintiffs.   As in <u>CytoSport</u>, Defendants' creation
4   and sale of counterfeit products is likely to cause Plaintiffs lose
5   some control over the reputation of their highly-recognizable
6   brands.   This factor therefore weighs at least slightly in favor of
7   issuing a TRO.

8              **3.   <u>Balance of Equities</u>**

9        Third, the Court examines the balance of the equities.
10  "Courts must balance the competing claims of injury and must
11  consider the effect on each party of the granting or withholding of
12  the requested relief."   <u>Winter</u>, 555 U.S. 7, 24 (2008).   "[C]ourts
13  will not shy away from issuing" preliminary injunctive relief
14  "where to do so would be to aid a second comer who has sought to
15  trade upon the efforts and good will of the first comer."   <u>Helene</u>
16  <u>Curtis Indus., Inc. v. Church & Dwight Co.</u>, 560 F.2d 1325, 1333
17  (7th Cir. 1977).   Deliberate trademark infringement, especially in
18  the face of warnings about its impropriety, is therefore an
19  important consideration in weighing the balance of the equities.
20  <u>Id.</u>

21       Plaintiffs argue that the balance of hardships tips strongly
22  in their favor.   They assert -- as was the case in <u>Helene Curtis</u> --
23  that Defendants' deliberate and persistent infringement of
24  Plaintiffs' marks harmed them greatly.   As discussed above, the
25  Court agrees that Defendants' counterfeiting of Plaintiffs' marks
26  likely caused some irreparable harm.   Additionally, Defendants have
27  apparently persisted in infringing Plaintiffs' marks even after
28  being served with a cease and desist letter and after Plaintiffs

**United States District Court**
For the Northern District of California

asked Defendants to surrender the counterfeit items. Plaintiffs
also point out that issuance of a preliminary injunction is
unlikely to harm third parties, as genuine versions of Plaintiffs'
products are readily available from authorized sources.  The Court
agrees.

However, the relative effect on Defendants is somewhat harder
to judge.  Plaintiffs argue that monetary loss and inconvenience
does not weigh heavily against the potential threat Plaintiffs'
intangible assets.  That may be true, but monetary loss and
inconvenience are not the only hardships Defendants might face were
the Court to issue a TRO.  Plaintiffs seek an injunction against
Defendants and an order authorizing law enforcement to enter
Defendants' property and seize the allegedly counterfeit items.
That amounts to more than a minor inconvenience; such actions would
likely cause severe damage to Defendants' "intangible assets"
(including their business and reputations) as well.  Even so, that
damage can be discounted if it is the result of Defendants'
decision to persist in counterfeiting Plaintiffs' marks and
products.  Given the Court's finding that Plaintiffs are likely to
succeed on the merits of their infringement claims, therefore,
Plaintiffs' time and effort establishing their brands weighs much
more heavily than the (less likely) possibility of unwarranted
damage to Defendants' reputations.  The Court finds that the
balance of the equities weighs in Plaintiffs' favor.

### 4.  **The Public Interest**

"When a trademark is said to have been infringed, what is
actually infringed is the right of the public to be free of
confusion and the synonymous right of the trademark owner to

**United States District Court**
For the Northern District of California

1  control his products' reputation." <u>CytoSport</u>, 617 F. Supp. 2d at

2  1081.  Plaintiffs argue that the public has a strong interest in

3  being free from the confusion caused by Defendants' unauthorized

4  use of Plaintiffs' Trademarks, and the Court agrees.  Additionally,

5  there is circumstantial evidence that Defendants' marketing and

6  pricing strategies are intended to confuse the public.  This is not

7  a case where vendors are hawking cheap knock-offs of well-known

8  brands, and where the buyers likely realize that they are buying

9  counterfeit products.  Instead, as discussed above, Defendants

10 price their counterfeited items at levels comparable to the retail

11 prices of the genuine articles.  Indeed, Ms. Barrameda has

12 acknowledged that she frequently reassures customers that the

13 products she sells are genuine. Keats Decl. Ex. 3.  This factor,

14 as well, weighs in favor of issuing a TRO.

15         **5.   <u>Conclusion</u>**

16     The Court finds that Plaintiffs are likely to succeed on the

17 merits of their trademark infringement and unfair competition

18 claims and that the public interest strongly weighs in Plaintiffs'

19 favor.  The balance of hardships, too, favors Plaintiffs, though

20 perhaps less strongly.  The likelihood of irreparable harm weighs

21 least strongly in Plaintiffs favor, because Plaintiffs have failed

22 to show that they are likely to suffer serious irreparable harm.

23 Nonetheless, that factor weighs at least slightly in favor of

24 granting a TRO.  Given that two of the factors weigh strongly in

25 favor of granting a TRO, and the others weigh at least slightly in

26 Plaintiffs' favor, the Court finds that preliminary relief is

27 appropriate.  Accordingly, Plaintiffs' motion for a temporary

28 restraining order is GRANTED.

**United States District Court**
For the Northern District of California

   **B.   Seizure Order**

   The Counterfeiting Act of 1984 permits the Court to issue an
ex parte order for the seizure of goods and counterfeit marks.  15
U.S.C. § 1116(d)(1)(A).  Plaintiffs seek an order under that
statute authorizing law enforcement to enter Glamora and seize
counterfeit products and related items.  "The mere allegation that
a defendant is engaged in counterfeiting, and thus has an incentive
to destroy evidence, without more, is insufficient to support
granting an ex parte request for a seizure order."  Rovio Entm't
Ltd. v. Royal Plush Toys, Inc., 907 F. Supp. 2d 1086, 1098 (N.D.
Cal. 2012) (citing Lorillard Tobacco Co. v. Bisan Food Corp., 377
F.3d 313, 321-22 (3d Cir. 2004)).  Crucial to determining whether a
seizure order is appropriate is evidence that Defendants are likely
to hide, destroy, or transfer the infringing products to preclude
their use as evidence.  Also important is the likelihood that
Defendants will comply with court orders -- if Defendants are
unlikely to comply with court orders, an ex parte seizure order may
be appropriate.  See Lorillard Tobacco, 377 F.3d at 320-21.

   Here, the length, persistence, and deliberate nature of
Defendants' alleged infringement constitutes the "something more"
that is required for a seizure order to issue.  Defendants have
apparently been selling counterfeit goods for over two years, even
in the face of a cease and desist letter and a direct request to
surrender the counterfeit items.  The openness and deliberateness
of Defendants' actions also militates in favor of a seizure order.
The Court finds that these facts demonstrate a likelihood that
Defendants may attempt to destroy or hide the counterfeit items
absent an ex parte seizure order.

**United States District Court**
For the Northern District of California

An order other than an ex parte seizure order is not adequate to enjoin the counterfeiting and infringing of Plaintiffs' Trademarks.  The only effective method of preventing the counterfeit goods from being removed, hidden, moved, destroyed, or made otherwise inaccessible and of preserving other possible relevant evidence is to issue an order requiring seizure of such evidence without notice to Defendants.  Therefore the interests of justice require a waiver of notice pursuant to Federal Rule of Civil Procedure 65(b)(1)(B) and the Lanham Act, 15 U.S.C. Section 1116.  Plaintiffs have not publicized the requested seizure and have presented evidence that the counterfeit goods are located at the places at which the seizures are to take place.  Plaintiffs have also provided the required notice to the United States Attorney for the Northern District of California.  <u>See</u> 15 U.S.C. §1116(d)(2).  Plaintiffs' motion for an ex parte seizure order is GRANTED.

**C.   <u>Asset Freeze</u>**

Plaintiffs seek another ex parte TRO temporarily freezing Defendants' assets.  "A party seeking an asset freeze must show a likelihood of dissipation of the claimed assets, or other inability to recover monetary damages, if relief is not granted." <u>Johnson v. Couturier</u>, 572 F.3d 1067, 1085 (9th Cir. 2009).  Plaintiffs argue that Ms. Barrameda's connections to the Philippines and her holdings in penny stocks (<u>see</u> Keats Decl. Ex. 4) make it possible that Ms. Barrameda will flee to the Philippines to avoid judgment in this Court.

The Court finds those facts insufficient to support such an extraordinary measure.  Ms. Barrameda's Filipino heritage does not

**United States District Court**
For the Northern District of California

1   automatically make her likely to flee the country.   Nor does the

2   Court understand why her ownership of penny stocks makes it easier

3   for her to secret assets.   Indeed, Plaintiffs found out about Ms.

4   Barrameda's stock holdings through a public SEC filing.   Id.; Keats

5   Decl. ¶ 12.   Presumably, the public nature of her holdings will

6   actually make it more difficult to hide those assets.   Nor have

7   Plaintiffs provided evidence as to the scope of Defendants' assets

8   in relation to the allegedly infringing activities.   As a result, a

9   blanket asset freeze might be grossly disproportionate to the size

10  of the alleged counterfeiting operation.   Finally, Plaintiffs have

11  provided evidence that Ms. Barrameda owns and operates a physical

12  storefront in California.   Therefore, Ms. Barrameda almost

13  certainly has some assets in California that would be difficult or

14  impossible to hide or dissipate.   Plaintiffs' motion for an ex

15  parte TRO freezing Defendants' assets is DENIED.

16      **D.    Expedited Discovery**

17      The Counterfeiting Act specifically envisions expedited

18  discovery in connection with seizure orders.   See 15 U.S.C. §

19  1116(d)(10)(B) (permitting the Court to modify time limits for

20  discovery in connection with a seizure order).   Expedited discovery

21  may be granted when "some unusual circumstances or conditions exist

22  that would likely prejudice the party if he were required to wait

23  the normal time.   Such prejudice is frequently the case where a

24  well-known trademark . . . has been counterfeited and the sources

25  or purchasers of the counterfeit products are unknown to

26  plaintiff."   Fimab-Finanziaria Maglificio Biellese Fratelli Fila

27  S.p.A. v. Kitchen, 548 F. Supp. 248, 250 (S.D. Fla. 1982).   That is

28  precisely the situation that has arisen here: Defendants have

allegedly counterfeited Plaintiffs' well-known trademarks, and
Plaintiffs are unaware of the origins of the counterfeit goods.
Given the Court's prior finding the likelihood that Defendants may
destroy or hide evidence, expedited discovery is appropriate, and
Plaintiffs may be prejudiced without it.  Plaintiffs' motion for
expedited discovery is GRANTED.

### E.  Bond

"Rule 65(c) invests the district court with discretion as to
the amount of security required, if any." Jorgensen v. Cassiday,
320 F.3d 906, 919 (9th Cir. 2003) (internal quotation marks
omitted).  Additionally, the Court may grant a seizure order only
if "the person obtaining an order under this subsection provides
the security determined adequate by the court for the payment of
such damages as any person may be entitled to recover as a result
of a wrongful seizure or wrongful attempted seizure . . . ."  15
U.S.C. § 1116.  Because the Court has granted a seizure order, the
Court must also require Plaintiffs to provide the necessary
security.  Plaintiffs argue that a bond of $10,000 is sufficient to
protect Defendants.  However, Plaintiffs have provided no evidence
as to the scope of Defendants' business operations or the portion
of those operations that might be affected by the seizure order.
Accordingly, the Court will authorize the seizure order only upon
Plaintiffs' posting a bond of $50,000 as security.

### F.  Hearing and Time Limits

When the Court issues a seizure order, it must hold a hearing
"not sooner than ten days after the order is issued and not later
than fifteen days after the order is issued, unless the applicant
for the order shows good cause for another date . . . ."  15 U.S.C.

United States District Court
For the Northern District of California

§ 1116(d)(10)(A).  Under ordinary circumstances, therefore, the Court would be required to hold a hearing on the seizure order between December 26 and December 31.  Additionally, a TRO cannot last longer than fourteen days unless the Court extends it, for good cause or because the adverse party consents to an extension. Fed. R. Civ. P. 65(b).  Scheduling in this case is complicated by the holiday season: the courthouses in this District will be closed on December 26; the 27th and 28th are a Saturday and Sunday; and court will not be in session the following week.  Thus, the earliest day on which the Court could hear these matters is January 5.  Plaintiffs have pursued their claim with diligence, but the earliest date on which they were able to arrange enforcement of the seizure order is December 17, 2014.  Declaration of Anthony M. Keats of December 15, 2014 ("Keats Decl. II") ¶ 3.

The Court hereby sets a hearing in this matter for January 9, 2015 at 10:00 a.m., in Courtroom 1 of the United States District Court, Northern District of California, located in the Phillip Burton Federal Building & United States Courthouse, 450 Golden Gate Avenue, San Francisco, California 94102.  At the hearing, Defendants must show cause why a preliminary injunction should not issue.  The Court will also hear argument regarding the seizure order.  That hearing will be 24 days after the issuance of this Order, within the extended time limit permitted by Rule 65(b). Because the TRO enjoins Defendants only from infringing Plaintiffs' rights, and because the seizure order permits only the seizure of counterfeit goods, the additional ten days are unlikely to prejudice Defendants.  Indeed, the additional time may even benefit

Defendants by giving them more time to retain counsel, gather evidence, and prepare their arguments.

**V. CONCLUSION**

For the reasons set forth above, Plaintiffs' motions for a temporary restraining order, order to show cause, seizure order, and expedited discovery are GRANTED. Plaintiffs' motion for a temporary restraining order freezing Defendants' assets is DENIED. The Court hereby orders as follows:

**A. Temporary Restraining Order**

IT IS HEREBY ORDERED that Defendants and their owners, officers, directors, employees, agents, servants, representatives, and all other persons, firms, or corporations acting in active concert or participation with Defendants be enjoined and restrained pending the hearing and determination of the Order to Show Cause re Preliminary Injunction from:

1. marketing, advertising, distributing, offering to sell, or selling any product, packaging, or any other item of any kind that is or ever was named or labeled with the Plaintiffs' Trademarks or the Louis Vuitton Copyrighted Prints, or any colorable imitation thereof;

2. using the Plaintiffs' Trademarks or the Louis Vuitton Copyrighted Prints, or any colorable imitation thereof, on any website or in any other marketing, advertising, or sales materials of any kind;

3. transferring, transporting, shipping, sending, moving, disposing of, discarding, destroying, exporting, or otherwise parting with custody, control, or possession of any product,

**United States District Court**
For the Northern District of California

**United States District Court**
For the Northern District of California

packaging, or any other item of any kind that is or ever was named or labeled with Plaintiffs' Trademarks or the Louis Vuitton Copyrighted Prints, or any colorable imitation thereof;

4.    modifying, re-labeling, re-packaging, re-naming, concealing, or otherwise changing the content, appearance, name, packaging, or any other element, aspect, characteristic, or feature of any product, packaging, or other item that is or ever was named or labeled with Plaintiffs' Trademarks or the Louis Vuitton Copyrighted Prints, or any colorable imitation thereof;

5.    transferring, transporting, shipping, sending, moving, disposing of, discarding, destroying, exporting, or otherwise parting with custody, control, or possession of (or modifying, editing, concealing, or otherwise changing the content of) any document, data, or record (including, but not limited to, any computer file, e-mail, spreadsheet, and any other record existing in electronic form) relating in any way to the manufacture, purchase, importation, labeling, assembling, distributing, marketing, advertising, offering to sell, selling, or shipping of any product, package, or any other item of any kind that is or ever was named or labeled with Plaintiffs' Trademarks or the Louis Vuitton Copyrighted Prints, or any colorable imitation thereof, (including, but not limited to, any record relating to any purchase or any sale of any item bearing Plaintiffs' Trademarks or the Louis Vuitton Copyrighted Prints, or any colorable imitation thereof);

6.    Infringing or diluting any of the trademarks or copyrights identified below:

**Louis Vuitton Trademarks**

LV (and pattern design)            0,297,594

**United States District Court**
For the Northern District of California

| | | |
|---|---|---|
| 1 | LV (and pattern design) | 2,399,161 |
| 2 | LV (and pattern design) | 4,192,541 |
| 3 | Interlocking "LV" Design | 1,519,828 |
| 4 | Interlocking "LV" Design | 1,794,905 |
| 5 | Interlocking "LV" Design | 2,361,695 |
| 6 | Interlocking "LV" Design | 4,614,736 |
| 7 | LOUIS VUITTON | 1,045,932 |
| 8 | LOUIS VUITTON | 3,904,444 |
| 9 | LOUIS VUITTON | 1,990,760 |
| 10 | LOUIS VUITTON | 4,530,921 |
| 11 | LOUIS VUITTON PARIS | 2,346,373 |
| 12 | Damier (Design) | 3,576,404 |
| 13 | S-Lock (Design) | 3,617,909 |
| 14 | Flower (Design) | 2,773,107 |
| 15 | Flower (Design) | 2,177,828 |
| 16 | Flower (Design) | 2,181,753 |
| 17 | **Céline Trademarks** | |
| 18 | CÉLINE (Design) | 1,000,156 |
| 19 | CELINE | 1,744,898 |
| 20 | **Dior Trademarks** | |
| 21 | Dior (Design) | 1,923,564 |
| 22 | CHRISTIAN DIOR | 0,543,994 |
| 23 | CHRISTIAN DIOR | 1,829,995 |
| 24 | CHRISTIAN DIOR (Design) | 1,816,812 |
| 25 | Dior (Design) | 2,749,176 |
| 26 | Dior (Design) | 3,731,629 |
| 27 | DIOR (Design) | 4,362,717 |
| 28 | /// | |

**Louis Vuitton Copyrights**

> [Multicolor monogram--white print]: no. A31024.   VA0001250120
> Multicolor monogram--white print /
>     by Takashi Murakami.                  VA0001365645

7. effecting assignments or transfers, forming new entities or associations, or utilizing any other device for the purpose of circumventing or otherwise avoiding the prohibitions set forth in paragraphs (1) through (6) above; or

8.   assisting, aiding or abetting any other person or business entity in engaging in any activity referred to in paragraphs (1) through (6) above.

**B.   Seizure Order**

IT IS HEREBY ORDERED, that the United States Marshal for the Northern District of California, or any federal, state, county or local law enforcement officers, assisted by one or more attorneys or agents of Plaintiffs, is authorized to seize, impound, and deliver to Plaintiffs or their representatives (i) any and all unauthorized and unlicensed merchandise and/or packaging bearing the Plaintiffs' Trademarks or the Louis Vuitton Copyrighted Prints as described above; (ii) the means for making the same; (iii) the books and records relating thereto, including but not limited to records and data contained in electronic format on computers, servers, hard drives, zip drives, and/or disks; and (iv) containers or vehicles in which the same are held or transported, which Defendants sell, attempt to sell or hold for sale, at all locations within this District and other Districts where Defendants' Counterfeit and/or Infringing Goods are sold, offered for sale, distributed, transported, manufactured, and/or stored including,

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

1  but not limited to Glamora by Sadia, 2475 Sand Creek Road, Suite
2  112, Brentwood, California 94513;

3      IT IS FURTHER ORDERED that the United States Marshal or other
4  law enforcement officer(s) effecting such seizure shall employ
5  whatever reasonable force is necessary to enter the premises owned,
6  leased, or controlled by Defendants or the location to be searched
7  where Defendants' Counterfeit and/or Infringing Goods or labels and
8  business records relating thereto may be found, and to inspect the
9  contents of any computers, rooms, vehicles, closets, cabinets,
10  containers, cases, desks, or documents located in the identified
11  locations or other premises controlled by Defendants;

12      IT IS FURTHER ORDERED that Plaintiffs' agents shall promptly
13  inspect all items seized and, if any items are found to be
14  authorized products, such items are to be returned to Defendants
15  within twenty (20) business days after the date this Order is
16  executed;

17      IT IS FURTHER ORDERED that the search and seizure ordered
18  herein may be photographed or videotaped for the purpose of
19  authenticating and assisting in obtaining evidence and preventing
20  any controversy regarding the activities and events occurring
21  during said search and seizure;

22      IT IS FURTHER ORDERED that any merchandise and/or packaging or
23  means of making such merchandise and/or packaging or records and
24  other items seized shall be appropriately tagged to permit
25  identification; Defendants shall be given a receipt therefor; such
26  merchandise, records, or other items seized shall be impounded in
27  the custody or control of Plaintiffs or Plaintiffs' agents as
28  substitute custodian pending further order of this Court and shall

**United States District Court**
For the Northern District of California

1  be made available for inventory inspection by the party from which

2  it was seized or its counsel during normal business hours; and that

3  any such records seized shall likewise be impounded and shall be

4  subject to a protective order whereby access thereto shall be

5  initially restricted to Plaintiffs and Plaintiffs' counsel and

6  Defendants and Defendants' attorneys of record, who shall be

7  permitted to inspect and copy such records, and such records shall

8  be copied and the copies returned to Defendants within twenty (20)

9  business days of the date this Order is executed.  This protective

10  order, restricting access to such documents, shall expire on

11  twenty-four (24) business days after the date this Order is

12  executed;

13      IT IS FURTHER ORDERED that Plaintiffs shall post a corporate

14  surety bond, cash, or certified attorney's check in the amount of

15  $50,000 as security, determined adequate for the payment of such

16  damages as any person may be entitled to recover as a result of a

17  wrongful seizure, attempted seizure, or restraint hereunder;

18      IT IS FURTHER ORDERED, that sufficient cause having been

19  shown, the above seizure shall take place and service of this Order

20  shall be made on Defendants personally, or by delivery to an adult

21  of suitable age, at Defendants' place of business or residence or

22  where Defendants are selling or holding for sale the items to be

23  seized, and that such service shall be made and such seizure shall

24  take place within ten (10) days from the date of this Order or such

25  time as may be extended by the Court; and

26      IT IS FURTHER ORDERED that Plaintiffs' counsel file with the

27  Court within ten (10) business days after the seizure is executed,

28  a document specifying whether goods and/or other materials were

1  seized and a description thereof, and where the goods and/or other

2  materials are stored.

3      IT IS FURTHER ORDERED that personal service of this Order,

4  Plaintiffs' Application, and all documents filed in support thereof

5  be made on Defendants within seven (7) days of the date of this

6  Order.  Such service shall be deemed sufficient service; and

7      IT IS FURTHER ORDERED that this Temporary Restraining Order

8  shall remain in effect until the date set for hearing on the Order

9  to Show Cause re Preliminary Injunction, or unless otherwise

10  ordered by subsequent order of this Court.

11      C.   **Order to Show Cause Regarding Preliminary Injunction and**

12           **Expedited Discovery**

13      IT IS HEREBY ORDERED that Defendants or their respective

14  attorney(s) show cause on Friday, January 9, 2015, at 10:00 a.m.,

15  or as soon thereafter as counsel may be heard, in Courtroom 1 of

16  the United States District Court, Northern District of California,

17  located in the Phillip Burton Federal Building & United States

18  Courthouse, 450 Golden Gate Avenue, San Francisco, California

19  94102, why an Order should not be issued granting Plaintiffs a

20  Preliminary Injunction pursuant to Rule 65 of the Federal Rules of

21  Civil Procedure, which shall extend during the pendency of this

22  suit the same injunctive relief previously granted by the

23  aforementioned Temporary Restraining Order;

24      IT IS FURTHER ORDERED that Defendants or their respective

25  attorney(s) show cause at the hearing set forth above, why an Order

26  should not be issued granting Plaintiffs expedited discovery

27  allowing them to immediately serve discovery requests on Defendants

28  ///

**United States District Court**
For the Northern District of California

1   and subpoenas on any third parties believed to have information

2   relevant to this action; and

3        IT IS FURTHER ORDERED that Defendants shall have up to and

4   including January 2, 2015 at 5:00 p.m. within which to file and

5   serve on Plaintiffs' counsel, Stubbs Alderton & Markiles LLP, via

6   email to akeats@stubbsalderton.com, kgatien@stubbsalderton.com, and

7   vlee@stubbsalderton.com, or via facsimile to (310) 746-9822, or via

8   hand delivery to Plaintiffs' counsel at their offices located at

9   1453 Third Street Promenade, Suite 300, Santa Monica, California

10  90401, with any briefs, affidavits, or other evidence in opposition

11  to the Application for Order to Show Cause re Preliminary

12  Injunction.

13       Defendants are hereby put on notice that failure to attend the

14  Order to Show Cause Hearing shall result in the immediate issuance

15  of the Preliminary Injunction, which shall be deemed to take effect

16  immediately upon the expiration or dissolution of the Temporary

17  Restraining Order.  Defendants are hereby further notified that

18  they shall be deemed to have actual notice of the issuance and

19  terms of such Preliminary Injunction, and that any act by

20  Defendant(s) in violation of any of its terms may be considered and

21  prosecuted as contempt of this Court.

22

23       IT IS SO ORDERED.

24

25  Dated: December 16, 2014                    _____

26                                       UNITED STATES DISTRICT JUDGE

27

28