Timothy J. Halloran - 104498
    (thalloran@mpbf.com)
Peter L. Weber - 218473
    (pweber@mpbf.com)
MURPHY, PEARSON, BRADLEY & FEENEY
88 Kearny Street, 10th Floor
San Francisco, CA  94108-5530
Tel:    (415) 788-1900
Fax:    (415) 393-8087

Attorneys for Defendants
GLAMORA BY SADIA and SADIA BARRAMEDA

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

LOUIS VUITTON MALLETIER, S.A. a société anonyme duly organized and existing under the laws of France; CELINE, S.A., a société anonyme duly organized and existing under the laws of France; and CHRISTIAN DIOR, S.A., a société anonyme duly organized and existing under the laws of France ,

                        Plaintiffs,

v.

GLAMORA BY SADIA, an unknown business entity; SADIA BARRAMEDA, an individual; NEW COMPENDIUM CORPORATION, a Colorado corporation; and JOHN DOES 2 to 10, inclusive,

                        Defendants.

Case No.: 3:14-cv-05421-BLF

**DOCUMENT FILED UNDER SEAL**

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

**DEFENDANT SADIA BARRAMEDA'S OPPOSITION TO PLAINTIFFS' EX PARTE APPLICATION FOR:**
    **1.  TEMPORARY RESTRAINING ORDER TO FREEZE DEFENDANTS' ASSETS PENDING A DETERMINATION OF LIABILITY AND DAMAGES; AND**
    **2.  ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION**

Date:  November 12, 2015
Time: 9:00 a.m.

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ..................................................................................................1

II.   STATEMENT OF FACTS .....................................................................................2

    A.    Disputed Evidence .....................................................................................2

    B.    Relevant and Disputed Facts......................................................................4

III.  ANALYSIS ............................................................................................................7

    A.    Plaintiffs' Attempt to Freeze Ms. Barrameda's Assets Based on Unsubstantiated
        Conclusions and Irrelevant Financial Transactions Should Not Be Rewarded ...............7

    B.    Plaintiffs Have Not Established Each Element Required to Issue a Preliminary
        Injunction ...................................................................................................8

    C.    Plaintiffs Have Not Shown a Likelihood of Success on the Merits .................................9

    D.    Plaintiffs Have Not Shown a Likelihood of Irreparable Harm Because Glamora
        Has Insurance With Adequate Limits and Because They Have Not Shown
        Ms. Barrameda Is Hiding or Dissipating Assets.........................................................11

    E.    Any Asset Freeze Would Create a Hardship to Ms. Barrameda ...................................13

    F.    Ms. Barrameda Closed Glamora in December 2014; Thus, There Is No Public
        Interest That Will be Served by an Asset Freeze........................................................13

    G.    The Requested Order Is Overbroad .........................................................14

IV.   CONCLUSION ...................................................................................................14

DEFENDANT SADIA BARRAMEDA'S OPPOSITION TO PLAINTIFFS' EX PARTE
APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE
Case No.: 3:14-cv-05421-BLF

1

# TABLE OF AUTHORITIES

2

**Page**

3

## Cases

4

*AMF, Inc. v. Sleekcraft Boats*
   599 F.2d 341 (9th Cir. 1979) ........................................................................9

5

*Amoco Production v. Village of Gambell*
6
   480 U.S. 531 (1987) ...................................................................................13

7

*Brookfield Communications Inc. v. West Coast Entertainment Corp*.
   174 F.3d 1036 (9th Cir. 1999) ....................................................................9
8

9

*Caribbean Marine Services Co. v.* Baldrige
   844 F.2d 668 (9th Cir. 1988) .....................................................................14

10

*International Jensen v. Metrosound USA*
11
   4 F.3d 819 (9th Cir. 1993) ........................................................................13

12

*Johnson v. Couturier*
   572 F.3d 1067 (9th Cir. 2009) ...................................................................11
13

14

*Mazurek v. Armstrong*
   520 U.S. 968 (1997) ....................................................................................8

15

*Nutri/System, Inc. v. Con-Stan Indus., Inc.*
16
   809 F.2d 601 (9th Cir. 1987) .....................................................................9

17

*Official Airline Guides, Inc. v. Goss*
   6 F.3d 1385 (9th Cir. 1993) .......................................................................9
18

19

*Regents of University of California v. ABC, Inc.,*
   747 F.2d 511 (9th Cir. 1984) .....................................................................8

20

*Shakey's Inc. v. Covalt*
21
   704 F.2d 426 (9th Cir. 1983) .....................................................................9

22

*Tanner Motor Livery, Ltd V. Avis,* Inc
   316 F.2d 804 (9th Cir. 1983) .....................................................................8
23

24

*Towery v. Brewer*
   672 F.3d 650 (9th Cir. 2012) .....................................................................8

25

*University of Texas v. Camenisch*
26
   451 U.S. 390 (1981) ....................................................................................8

27

*Winter v. NRDC, Inc.*
   555 U.S. 7 (2008) ..................................................................................8, 11
28

- ii -

# TABLE OF AUTHORITIES
(continued)

**Page**

**Statutes**

15 U.S.C.
   §1117(a) ................................................................................................................11


**Other Authorities**

Ladd, Expert Testimony, 5 Vand. L. Rev.
   414 (1952) ..............................................................................................................10


**Rules**

Federal Rules of Evidence
   Rule 702 ................................................................................................................10

DEFENDANT SADIA BARRAMEDA'S OPPOSITION TO PLAINTIFFS' EX PARTE
APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE
Case No.: 3:14-cv-05421-BLF

# I.   INTRODUCTION

Defendant SADIA BARRAMEDA's business, Glamora by Sadia ("Glamora"), made less than $50,000 in sales per year for the five (5) years it existed.  Yet, Plaintiffs portray Glamora as a multi-million dollar enterprise in order to justify a freeze of Ms. Barrameda's assets.  Plaintiffs' motion is based on the erroneous assumption that Ms. Barrameda profited handsomely from the sales of allegedly counterfeit goods.

What is troubling is that Plaintiffs seized Glamora's financial records in December 2014 and therefore have a full understanding of the size of the business.  Moreover, in early 2015, Plaintiffs subpoenaed Ms. Barrameda's personal bank statements and brokerage account records, Glamora's bank records, and New Compendium Corporation's ("NCC") bank statements.  Those records clearly showed that Glamora generated less than $350,000 in total sales in five (5) years.  The total sales attributable to the sale of alleged counterfeit goods is less than $200,000, which includes the sale of genuine products.  For reasons unknown, Plaintiffs blatantly ignore this information and instead paint an alarmingly untrue and misleading picture of Ms. Barrameda's life in order to freeze all of her assets.  The freeze has prevented Ms. Barrameda from paying basic household bills like her mortgage and from obtaining money for daily use.  The freeze has also prevented Ms. Barrameda from operating her businesses, which have no relation to Glamora.

Plaintiffs' ruse is shocking not only because they have known since December 2014 that Glamora's sales were less than $350,000 total, but also because Ms. Barrameda has insurance that covers her for some or all of the losses sought by Plaintiffs.  This knowledge, in conjunction with numerous misstatements by Plaintiffs' counsel, militates against affording relief to Plaintiffs.

The preliminary injunction should not be issued because Plaintiffs have not demonstrated that they will suffer irreparable harm.  Glamora has adequate insurance policy limits to cover the alleged losses.  Moreover, the balance of hardships favors Ms. Barrameda.  An asset freeze of any kind prevents her from paying ordinary living expenses and prevents her from operating her businesses.  Finally, there is no public interest that will be served by granting an asset freeze.  Plaintiffs have not demonstrated any cognizable public interest that would be served by freezing Plaintiff's assets.

- 1 -

DEFENDANT SADIA BARRAMEDA'S OPPOSITION TO PLAINTIFFS' EX PARTE
APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE
Case No.: 3:14-cv-05421-BLF

## II.     STATEMENT OF FACTS

**A.     Disputed Evidence**

Defendant Sadia Barrameda first addresses the numerous misrepresentations and untrue statements in Plaintiffs' moving papers and the Declaration of Anthony M. Keats in support of Plaintiffs' Ex Parte Application.  Plaintiffs rely on this "evidence" to support the issuance of an order freezing Ms. Barrameda's assets.

Plaintiffs contend that NCC is the main company among the various companies affiliated with Ms. Barrameda, and was the primary source of money into Ms. Barrameda and Glamora's bank accounts.  (Plaintiffs' Ex Parte Application ("Ptf.'s App.") 3:13-16)  The statement is supposedly supported by Mr. Keats' declaration and Exhibit 3 thereto.  However, upon review, there are no statements in Mr. Keats' declaration to support the allegation that NCC is the main company among the various companies affiliated with Ms. Barrameda and that it was the primary source of money into Ms. Barrameda and Glamora's bank accounts.  Moreover, Exhibit "3" to Mr. Keats' declaration is handwritten documents lend no support to the statement.

Plaintiffs assert that NCC accounts for almost eighty percent (80%) of payments into Ms. Barrameda and Glamora's bank accounts since May 18, 2011 and purports to support this statement with Exhibit "4" to Mr. Keats' declaration.  (Ptf.'s App. 3:16-21)  However, Exhibit "4" is a document showing a withdrawal by Ms. Barrameda in the amount of $991,640.69 and a six (6) page Bank of America statement for NCC for the period March 1, 2013 through March 31, 2013.  Glamora was in existence from early 2010 to December 2014, a period of almost five (5) years.  Plaintiffs submit one month of statements from NCC to support the sweeping statement that NCC accounted for 80% of payments in Ms. Barrameda and Glamora's accounts.  They do not submit any statements from Ms. Barrameda or Glamora showing income.

Plaintiffs contend an additional ten percent (10%) of money being paid into Ms. Barrameda and Glamora's accounts is just "one account paying another" and that the remaining payments are from outside sources.  (Ptf.'s App. 3:16-21)  They offer the same documents in support, the $991,640.69 withdrawal and one month of NCC bank statements.  Unfortunately for Plaintiffs, neither document

DEFENDANT SADIA BARRAMEDA'S OPPOSITION TO PLAINTIFFS' EX PARTE
APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE
Case No.: 3:14-cv-05421-BLF

1   supports any claim made by Plaintiffs as to the source of Ms. Barrameda and Glamora's accounts.

2       In probably the most glaring example of unfounded assertion, Plaintiffs state Alpine Securities

3   Corporation transferred $8,000,000 into NCC between August 2012 and April 2015.  The document in

4   support is Exhibit "5" to Mr. Keats' declaration. (Ptf's App. 3:22-25)  However, Exhibit "5" is a Grant

5   Deed for property located at 4940 Discovery Point in Discovery Bay, California, Ms. Barrameda's

6   family home.

7       Plaintiffs state "Defendants" used these various accounts to take cash out.  (Ptf.'s App. 4:1).

8   Plaintiffs offer three handwritten pages to assert that Ms. Barrameda would pick up cash.  (Ptf's App.

9   4:1-3)  The handwritten documents are hearsay and unreliable and there is nothing nefarious about a

10  business owner picking up business earnings.

11      Mr. Keats states that checks from Bank of America reveal "considerable sums" of money were

12  spent on boats, cars, art, and antiques.  (Ptf.'s App. 5:3-5, Keats Decl. ¶14, Exhs. 10-11 thereto).  The

13  checks are from the years 2012- 2014, before this lawsuit was filed and therefore cannot support a

14  finding that Ms. Barrameda dissipated or hid assets.

15      Plaintiffs present an April 15, 2015 Form 10-K to show Ms. Barrameda's ownership of shares

16  in a publicly traded company (Cannabis Sativa).  Plaintiffs conveniently fail to state the form is for the

17  fiscal year ending 2014, which means the document does not demonstrate any activity by

18  Ms. Barrameda with respect to those shares at any time after this lawsuit and certainly does not show

19  any effort to dissipate or hide assets.

20      Plaintiffs assert that Ms. Barrameda "invested" $2.1 MM into Hemp, Inc. and Weed Growth

21  Fund, Inc. (fka Ovation Research, Inc.), including $1.1 MM to Weed Growth Fund after litigation

22  started.  (Ptf.'s App. 5:16-19).  In support, Plaintiffs offer Mr. Keats' declaration and Exhibit "13"

23  thereto.  The "evidence" is hearsay and does not support the conclusion that Defendants are acquiring

24  these stocks by using income from counterfeiting operations.

25      Plaintiffs submitted a Form 10-K for Cannabis Sativa, Inc. is for the fiscal year ended

26  December 31, 2014.  It shows that Ms. Barrameda owns 5,405,847 shares of the company.  (See

27  Exhibit 12 to Declaration of Anthony M. Keats.)  Ms. Barrameda purchased these shares over time; her

28

DEFENDANT SADIA BARRAMEDA'S OPPOSITION TO PLAINTIFFS' EX PARTE
APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE
Case No.: 3:14-cv-05421-BLF

1  last purchase was for 18,000 shares in August 2014, before this lawsuit was filed.  She has not

2  purchased or sold shares in this company since August 2014.   Declaration of Sadia Barrameda

3  ("Barrameda Decl.") ¶22.

4      Plaintiffs submitted a Form 8-K for Ovation Research (now Weed Growth Fund, Inc.) from

5  September 2014.   Through NCC, Ms. Barrameda purchased shares in this company in September

6  2014, before this lawsuit was filed. (See Exhibit 14 to Declaration of Anthony M. Keats.)

7  Ms. Barrameda has not bought or sold shares in this company since September 2014, however she has

8  delivered promised assets and loaned funds to it since and the compensation was only issued to NCC

9  on the 14th of December of 2014 as per contractual obligations.  Barrameda Decl. ¶23.

10      Finally, Plaintiffs submitted a Form 10-Q for Weed Growth Fund, Inc. for the quarterly period

11  ended November 30, 2014. (See Exhibit 15 to Declaration of Anthony M. Keats.) The form references

12  the company's purchase of a patent invented by Ms. Barrameda.  It does not refer to any purchase of

13  shares or transfer of money to the company by Ms. Barrameda or NCC.  Barrameda Decl. ¶24.

14  **B.    Relevant and Disputed Facts**

15      Plaintiffs contend Ms. Barrameda sold counterfeit handbags and other accessories bearing

16  Plaintiffs' marks. Ms. Barrameda contends she sold genuine or defective authentic merchandise and

17  therefore denies the claims.

18       For purposes of this motion, the relevant facts concern Ms. Barrameda's life and her activities

19  both prior to opening Glamora in 2010 and after it closed in 2014. Ms. Barrameda is a Philippine

20  national but has enjoyed permanent resident status in the United States for more than two decades.

21  Declaration of Sadia Barrameda ("Barrameda Decl.") ¶2.   She is a multi-talented woman who opened

22  Glamora as a hobby in 2010.  Barrameda Decl. ¶3.  She loved designer accessories and enjoyed

23  owning luxury brand products and seeing others' interest in them.   Barrameda Decl. ¶3.

24  Ms. Barrameda opened Glamora with money she earned from her investments.  Barrameda Decl. ¶5.

25      At the time she opened Glamora, Ms. Barrameda opened a business checking account at Bank

26  of America.  Barrameda Decl. ¶4.  This was a separate business account in the name of Glamora by

27  Sadia.  Barrameda Decl. ¶4.  All income and expenses associated with Glamora ran through this

28

- 4 -

1  account.  Barrameda Decl. ¶4.  Bank statements from this time period reflect deposits of the few sales

2  during this time period.  Barrameda Decl. ¶4.

3       Initially, Glamora sold Ms. Barrameda's own gently used items.  Barrameda Decl. ¶6.  When

4  her inventory ran out, she began buying items to re-sell and accepted consignments of luxury goods.

5  Barrameda Decl. ¶6.  Some of the items she purchased for re-sale were from China, which explains

6  some transfers of money to China.  Barrameda Decl. ¶6.  Ms. Barrameda estimates she made three or

7  four ($10,000) transfers to China in order to purchase items for re-sale in the Glamora store.

8  Barrameda Decl. ¶6.

9       From 2010 to 2014, Glamora sold designer purses and handbags, wallets, accessories and

10  Ms. Barrameda's own line of products called Sadia and Sadia Ross.  Barrameda Decl. ¶7.

11  Ms. Barrameda only sold what she believed to be genuine or "defective authentic" goods.  Barrameda

12  Decl. ¶8.  This is the reason why Ms. Barrameda priced items close to prices on sale directly from the

13  luxury brands. Barrameda Decl. ¶8.   Glamora closed in December 2014, shortly after the store was

14  raided and alleged counterfeit items were seized.  Barrameda Decl. ¶8.  The store remains closed to

15  this day.   Ms. Barrameda has no intentions of ever re-opening Glamora or anything similar.

16  Barrameda Decl. ¶8.

17       According to sales summary information taken from Glamora's point of sale system, which

18  utilized a program called Cash Register Express, Glamora's total sales for the entire period it was open

19  was $347,314.43.  Barrameda Decl. ¶10, Exhibit "2" thereto.  ██████████████████

20  ████████████████████████████████████████████████████████████

21  ████████████████████████████████████████████████████████████

22  ████████████████████████████████████████████████████████████

23  ████████████████████████████████████████████████████████████

24  ████████████████████████████████████████████████

25       Ms. Barrameda is now immersed in multiple endeavors, none of which involve the sale or

26  purchase of luxury items for re-sale.  Ms. Barrameda is affiliated with numerous ventures and as a

27  result, owns stock and/or positions in various companies.  Barrameda Decl. ¶14.    The companies

28

DEFENDANT SADIA BARRAMEDA'S OPPOSITION TO PLAINTIFFS' EX PARTE
APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE
Case No.: 3:14-cv-05421-BLF

referenced by Plaintiffs, which include New Compendium Corporation, New Compendium, Ltd., Cannabis Sativa, Hemp, Inc., and Weed Growth, Inc., are all related to Ms. Barrameda's pursuit of the sale of products derived from industrial hemp.  Barrameda Decl. ¶14.  While her investment career takes up most of her professional time, Ms. Barrameda has refocused her extra creative energies on authoring and co-authoring 4 published novels and continuing to file patents on her inventions in the U.S. Patent Office.  Barrameda Decl. ¶9.

Ms. Barrameda is not hiding assets.  Barrameda Decl. ¶17.  She is not transferring assets as a result of this lawsuit.  Barrameda Decl. ¶17.  The transactions referenced in Plaintiffs' moving papers are not related to Glamora's sales or the allegations or defenses in this lawsuit. New Compendium Corporation was formed in 2007 in Colorado.  Barrameda Decl. ¶15.  It serves to handle Ms. Barrameda's investments and is not related to Glamora, which was a sole proprietorship that sold handbags, jewelry and accessories. Barrameda Decl. ¶15.  Ms. Barrameda transferred small amounts of money from NCC to Glamora to keep it afloat, but sales proceeds from Glamora were never transferred to NCC.  Barrameda Decl. ¶15.  Ms. Barrameda's investments were always kept completely separate and apart from Glamora.  Barrameda Decl. ¶15.

Ms. Barrameda formed New Compendium, Ltd. in England in April 2015 to access trading on European markets.  So far, she has paid $100 to form the entity.  It currently does not, nor has it ever, conducted any business, had any bank accounts, or had any brokerage accounts.  New Compendium, Ltd., is a totally separate company from New Compendium Corporation, and because of this and the difference in their names, and jurisdiction, no stocks can be transferred from NCC to New Compendium, Ltd. without actually selling those assets for valid consideration.  Moreover, moving assets out of the United States in large quantities would create a huge tax burden for Ms. Barrameda and/or her companies.  It is completely untrue that in forming New Compendium, Ltd. Ms. Barrameda "sought to change the situs of NCC," as asserted by Mr. Keats in Paragraph 11 of his declaration.  Ms. Barrameda continues to operate NCC as she always has.  In fact, many of its investments are in restricted shares that can only be re-sold once the restrictions expire and in limited quantities.  Ms. Barrameda cannot simply transfer those assets to New Compendium, Ltd. even if she wanted to,

DEFENDANT SADIA BARRAMEDA'S OPPOSITION TO PLAINTIFFS' EX PARTE
APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE
Case No.: 3:14-cv-05421-BLF

1    which she does not.  Barrameda Decl. ¶16 (entire paragraph above).

2         It is true that Ms. Barrameda purchased her home in Discovery Bay and used funds withdrawn

3    from NCC to purchase the home.  Barrameda Decl. ¶18.  But that purchase occurred in 2013, well

4    before this lawsuit was filed.  In April 2015, Ms. Barrameda listed the home for sale but took it off the

5    market after learning of the temporary restraining order.  Barrameda Decl. ¶19.  She listed the home

6    not to hide or dissipate assets, but because she considered relocating to an area with better options for

7    schooling for her son.  Barrameda Decl. ¶19.  She made no effort to hide the fact that she was selling

8    my home, nor did she price it for a quick sale.  Barrameda Decl. ¶19.   In fact, her initial asking price

9    was substantially higher than the appraisal. Barrameda Decl. ¶19.

10        Ms. Barrameda obtained an equity loan secured by the home but it was not done to withdraw

11   equity.  The majority of these funds ($575,000) were loaned to another company.  According to

12   Plaintiffs' research, the home still has $600,000 in equity.  Barrameda Decl. ¶20.

13        Finally, Ms. Barrameda's ownership of shares in Cannabis Sativa, Inc., Hemp, Inc. and Weed

14   Growth Fund, Inc. are investments.  The money used to purchase the shares did not come from sales

15   from the Glamora store. Barrameda Decl. ¶21.

16                          **III.   ANALYSIS**

17   **A.    Plaintiffs' Attempt to Freeze Ms. Barrameda's Assets Based on Unsubstantiated
            Conclusions and Irrelevant Financial Transactions Should Not Be Rewarded**
18

19        Plaintiffs' moving papers contain two glaring omissions.  First, Glamora's total sales from

20   2010 through 2014 was $350,000.  These figures include sales of genuine Louis Vuitton, Celine and

21   Christian Dior products, as well as sales of Sadia and Sadia Ross, Ms. Barrameda's own labels, and

22   countless other products from other designers.  The figures also include consignment sales.  Glamora's

23   sales of Louis Vuitton, Celine and Christian Dior products must have totaled less than $350,000.

24        In December 2014, Plaintiffs seized Glamora's point of sale system containing all relevant

25   financial information of Glamora's sales.  In early 2015, Plaintiffs obtained Glamora's bank records

26   from Bank of America.   Plaintiffs also obtained Ms. Barrameda's personal brokerage account

27   information.  There is no valid reason why Plaintiffs would not inform this Court that Glamora's total

28

DEFENDANT SADIA BARRAMEDA'S OPPOSITION TO PLAINTIFFS' EX PARTE
APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE
Case No.: 3:14-cv-05421-BLF

sales were under $350,000 and that the sales of products allegedly bearing its marks were less.  The only explanation is that Plaintiffs are forcing Ms. Barrameda to explain her personal financial situation in order to harass and embarrass her and wanting to mislead this Court into believing Glamora made substantially more in sales despite having evidence to the contrary.

The other piece of information that Plaintiffs failed to disclose is evidence of Glamora's Commercial General Liability policy covering her for this alleged loss.  All relevant insurance information was disclosed to Plaintiffs in May 2015, including copies of certificates and the policy itself.

Again, Plaintiffs failed to disclose the information above, which is relevant to whether Plaintiffs would be irreparably harmed if a preliminary injunction should not issue.  Glamora was a small business that had adequate insurance coverage for the alleged loss.  A freeze of Ms. Barrameda's assets and financial accounts is not warranted.

**B.**  **Plaintiffs Have Not Established Each Element Required to Issue a Preliminary Injunction**

A preliminary injunction is an "extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997). "The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held," and it is generally inappropriate for a federal court at the preliminary injunction stage to give a final judgment on the merits. *University of Texas v. Camenisch*, 451 U.S. 390, 395 (1981); *Tanner Motor Livery, Ltd V. Avis, Inc*, 316 F.2d 804, 808 (9th Cir. 1983); see also *Regents of University of California v. ABC, Inc*., 747 F.2d 511, 514 (9th Cir. 1984) ("the function of a preliminary injunction is to preserve the status quo ante litem").  A party seeking preliminary injunctive relief must demonstrate: (1) that it is likely to succeed on the merits; (2) that it is likely to suffer irreparable harm in the absence of injunctive relief; (3) that the balance of equities tips in its favor; and (4) that an injunction is in the public interest. *Winter v. NRDC, Inc*., 555 U.S. 7 (2008).  Preliminary injunctions "should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Towery v. Brewer*, 672 F.3d 650, 657 (9th Cir. 2012).

DEFENDANT SADIA BARRAMEDA'S OPPOSITION TO PLAINTIFFS' EX PARTE
APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE
Case No.: 3:14-cv-05421-BLF

**C.      Plaintiffs Have Not Shown a Likelihood of Success on the Merits**

In order to obtain an order freezing Ms. Barrameda and NCC's assets, Plaintiffs must establish a likelihood of success on the merits, which in turn requires the Court to determine whether the alleged use of Plaintiffs' marks will likely cause consumer confusion. See *Brookfield Communications Inc. v. West Coast Entertainment Corp.* 174 F.3d 1036, 1053 (9th Cir. 1999) quoting *Official Airline Guides, Inc. v. Goss*, 6 F.3d 1385, 1391 (9th Cir. 1993)) (characterizing the likelihood of confusion inquiry as "[t]he core element of trademark infringement"). A likelihood of confusion exists "when consumers are likely to assume that a product or service is associated with a source other than its actual source because of similarities between the two sources' marks or marketing techniques." *Nutri/System, Inc. v. Con-Stan Indus., Inc.*, 809 F.2d 601, 604 (9th Cir. 1987) (quoting *Shakey's Inc. v. Covalt*, 704 F.2d 426, 431 (9th Cir. 1983)).

In *AMF, Inc. v. Sleekcraft Boats*, 599 F.2d 341 (9th Cir. 1979), the Ninth Circuit listed eight factors to be considered as part of the consumer confusion inquiry. *Id.* at 348-49. These "Sleekcraft factors" include: (1) the similarity of the marks; (2) the strength of the plaintiff's mark; (3) the relatedness or proximity of the goods; (4) the marketing channels used by each party; (5) the degree of care likely to be exercised by the purchaser; (6) the defendant's intent in selecting the mark; (7) evidence of actual confusion; and (8) the likelihood of expansion of the parties' product lines. *Id.*; see also *Brookfield,* supra, 174 F.3d at 1053-54.

Plaintiffs' moving papers do not address this element, stating only that the Court previously determined that Plaintiffs have demonstrated a likelihood of success on the merits. In December 2014, Plaintiffs filed an ex parte application seeking an injunction enjoining Glamora from selling alleged counterfeit goods and for an asset freeze. (Docket 5). Following the raid and seizure from Glamora, Ms. Barrameda closed the store and ceased doing business. As such, Ms. Barrameda agreed not to sell alleged counterfeit goods.

Contrary to Plaintiffs' assertion, this Court did not determine that Plaintiffs established a likelihood of success on the merits. There is no prior order containing a finding that Plaintiffs met this element in conjunction with the prior ex parte application. Because Plaintiffs have erroneously relied

DEFENDANT SADIA BARRAMEDA'S OPPOSITION TO PLAINTIFFS' EX PARTE
APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE
Case No.: 3:14-cv-05421-BLF

1   on a non-existent finding and have failed to analyze this element, their motion should be denied.

2         Furthermore, this Court should not accept Plaintiffs' assertion that Ms. Barrameda engaged in

3   the sale of counterfeit goods without allowing the issue to be contested, including the qualifications of

4   their lone product witness John Maltbie.  Mr. Maltbie's only qualification is that he has been "trained

5   in the identification of counterfeit products."  (Docket 8, 1:8)  No further explanation is provided. No

6   resume or curriculum vitae is provided.  Mr. Maltbie concludes that various products bearing

7   Plaintiffs' marks were forwarded to him, that he examined them and that the products are not genuine.

8   (Docket 8, ¶¶14, 29, 45)  But Mr. Maltbie's declaration does not state which marks were allegedly on

9   the counterfeit goods.  Without knowing which marks are at issue, and on which products, it is

10  impossible to know whether Plaintiffs have established similarity of marks.

11        Another issue with Mr. Maltbie's conclusion is whether he can conclude that the products are

12  not genuine.  Mr. Maltbie concludes the products are not genuine because, among other things, the

13  packaging, materials, stitching, colorways, and interior are "inconsistent" with genuine products.

14  (Docket 6, 6:13-28; Docket 8, ¶¶17, 32, 38)  Federal Rule of Evidence 702 provides that expert

15  testimony is not admissible unless "scientific, technical, or other specialized knowledge will assist the

16  trier of fact to understand the evidence or to determine a fact in issue…." Fed. R. Evid. 702. If "the

17  untrained layman would be qualified to determine intelligently and to the best possible degree the

18  particular issue without enlightenment from those having a specialized understanding of the subject

19  involved in the dispute then expert testimony will not assist the trier of fact." Fed. R. Evid. 702

20  advisory committee's note (quoting Ladd, Expert Testimony, 5 Vand. L. Rev. 414, 418 (1952).) It is

21  difficult, if not impossible, to challenge whether Mr. Maltbie's conclusions are admissible, given that a

22  determination of the issue set forth by Mr. Maltbie can arguably be determined by an untrained

23  layman.  Ultimately, whether the products are likely to confuse consumers should not be assumed

24  based on Mr. Maltbie's declaration.

25        Plaintiffs have failed to properly establish a likelihood of success on the merits.

26

27

28

─────────────────────────────────────

- 10 -

DEFENDANT SADIA BARRAMEDA'S OPPOSITION TO PLAINTIFFS' EX PARTE
APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE
Case No.: 3:14-cv-05421-BLF

**D.   Plaintiffs Have Not Shown a Likelihood of Irreparable Harm Because Glamora Has Insurance With Adequate Limits and Because They Have Not Shown Ms. Barrameda Is Hiding or Dissipating Assets**

The element of irreparable injury is not subject to balance; the moving party must "demonstrate that irreparable injury is likely in the absence of an injunction." *Winter v. Natural Res. Defense Council, Inc.*, 555 U.S. 7, 23 (2008). The Supreme Court has repeatedly emphasized that "injunctive relief [i]s an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Id*. at 22.  Plaintiffs have not shown that they will be irreparably harmed if the injunction does not issue.

As Plaintiffs admit, one measure of damages under the Lanham Act is an alleged infringer's profits.  15 U.S.C. §1117(a).  Ms. Barrameda has established that Glamora's total sales were $375,000 and therefore, Plaintiffs cannot establish profits that exceed this figure.  Ms. Barrameda has also established that her insurance policy limits exceed her total sales figures.  As such, Plaintiffs cannot show an inability to recover monetary damages if relief is not granted.  *Johnson v. Couturier,* 572 F.3d 1067, 1085 (9th Cir. 2009).  Plaintiffs may argue the ability to recover statutory damages instead of actual damages, but it is entirely speculative to claim a trumped up potential recovery of $5.2 MM to $52MM in statutory damages at this juncture.  This grossly inflated figure should be not be used as a basis to freeze any of Ms. Barrameda's assets.

Likewise, the transactions referenced by Plaintiffs are not related to the activities of Glamora and do not demonstrate any intent to dissipate or hide assets.  Plaintiffs focus their motion on the activities of Ms. Barrameda in relation to various entities, including NCC. Plaintiffs assert that NCC is the "primary" defendant yet NCC was only added to the lawsuit because Plaintiffs believe NCC made loans to Glamora.  NCC is not alleged to have engage in the sale of counterfeit products.  Other than the belief NCC loaned Glamora money, there is no evidence that NCC was otherwise involved in the day to day operations of Glamora.  Most importantly, there is no evidence that NCC received even a single cent from Glamora or Ms. Barrameda that can be traced to the sale of alleged counterfeit goods.

Plaintiffs first allege NCC was infused with $8 million dollars over three (3) years. But there is no evidence that NCC dissipated or transferred or hid any of its assets. NCC funds were used to

- 11 -

purchase Ms. Barrameda's family home but the sale occurred in March 2013, well before this action was filed. The purchase of Ms. Barrameda's home is unrelated to this lawsuit and does not show any effort to dissipate or hide assets. Ms. Barrameda listed her home in April 2015 but withdrew the home from the market when the temporary restraining order issued. The decision to list the home was not an attempt to dissipate or hide the asset; Ms. Barrameda sought to relocate for the benefit of her child and moving to an area with better options for schooling. Finally, Ms. Barremeda obtained a home equity loan in the amount of $625,000 and loaned $575,000 of these funds into a U.S. based SEC reporting company for which she already owned a substantial interest. There is still approximately $600,000 in equity in the home and therefore, the asset was not dissipated or hidden.

With regard to New Compendium, Limited, it was formed to trade shares on the European market. As of now, New Compendium, Limited does not conduct any business. Neither Ms. Barrameda nor NCC have transferred any assets into NCC, Ltd.

Ms. Barrameda purchased shares of Cannabis Sativa, Hemp, Inc. and Weed Growth Fund, Inc. through NCC. However, Plaintiff has not established that NCC used profits from the alleged sales of counterfeit products to purchase these shares and has not established that NCC's purchase of shares constitutes the dissipation or hiding of assets. In fact, given the value of the shares today, NCC has benefitted from the purchase of the shares.

Alpine Securities in an independent brokerage firm in Utah. Ms. Barrameda does not have a controlling interest in Alpine. There is no authority for making Alpine subject to a freeze order.

Finally, Plaintiffs make another glaring misstatement to the Court in their moving papers. Plaintiffs contend their ability to perform an "effective" accounting of Defendants' profits will be substantially, irreparably impaired unless the Court grants the requested restraining order. This is a blatant misstatement for three reasons. First, Plaintiffs seized and copied all of Glamora's sales information on December 17, 2014. They have had in their possession for the past (10) monts extensive information on Glamora's sales from the day it opened until the day it closed. Second, Plaintiffs served subpoenas on Bank of America and JH Darby, a brokerage firm. Both companies produced hundreds of pages of bank statements and brokerage account transactions during the time

DEFENDANT SADIA BARRAMEDA'S OPPOSITION TO PLAINTIFFS' EX PARTE
APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE
Case No.: 3:14-cv-05421-BLF

1  Glamora was open.  Third, Plaintiffs were provided additional financial information in the form of

2  reports generated from Glamora's point of sale system.  Plaintiffs have had information sufficient to

3  perform an accounting in early 2015.

4  **E.     Any Asset Freeze Would Create a Hardship to Ms. Barrameda**

5          In each case, a court must balance the competing claims of injury and must consider the effect

6  on each party of the granting or withholding of the requested relief. *Amoco Production v. Village of*

7  *Gambell*, 480 U.S. 531, 542 (1987); *see also International Jensen v. Metrosound USA*, 4 F.3d 819, 827

8  (9th Cir. 1993) ("In evaluating the balance of hardships a court must consider the impact granting or

9  denying a motion for a preliminary injunction will have on the respective enterprises").

10  Ms. Barrameda will suffer extreme prejudice if her assets are frozen, even if some limited allowance is

11  made for the payment of living and business expenses.  Ms. Barrameda actively engages in the

12  purchase and sale of shares.  The timing of purchases and sales is crucial to the business.  Any

13  restriction on her ability freely engage in these transactions compromises her ability to effectively

14  manage the business. She must be given the freedom to utilize her accounts in order to take advantage

15  of market timing.

16          Ms. Barrameda' established activities bear no relation to Glamora or the issues or defenses in

17  this suit.  Subjecting her to an asset freeze given the small size of Glamora's closed business and the

18  presence of substantial insurance is unwarranted.  The temporary restraining order has already harmed

19  Ms. Barrameda.  Barrameda Decl. ¶26.  Because of the TRO, she has been prevented from making

20  profitable stock trades.  Barrameda Decl. ¶26.  The timing of her share purchases and sales is crucial to

21  her business.  Barrameda Decl. ¶26.  Restrictions on her ability to engage freely in her business has

22  already caused her financial injury, and that injury will certainly increase if she is prevented from

23  taking advantage of market timing.  Barrameda Decl. ¶26.

24  **F.     Ms. Barrameda Closed Glamora in December 2014; Thus, There Is No Public Interest
         That Will be Served by an Asset Freeze**

25

26          The court "must consider the public interest as a factor in balancing the hardships when the

27  public interest may be affected," *Caribbean Marine Services Co. v. Baldrige,* 844 F.2d 668, 674 (9th

28

DEFENDANT SADIA BARRAMEDA'S OPPOSITION TO PLAINTIFFS' EX PARTE
APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE
Case No.: 3:14-cv-05421-BLF

Cir. 1988).  Plaintiffs assert that the public interest at stake as the right of the public not to be deceived or confused.  But there is no chance of the public being deceived or confused since Glamora was closed in December 2014 and Ms. Barrameda has ceased selling luxury goods per the stipulation of the parties entered on January 8, 2015.  (Docket 22)  While the public interest in this context may be relevant in determining whether to issue an injunction against the further sale of alleged counterfeit goods, the same concern is not present when the Court is asked to issue a sweeping asset freeze. Plaintiffs have not demonstrated what public interest is at stake by freezing all of Ms. Barrameda's assets and preventing her from operating business interests wholly unrelated to the allegations in Plaintiffs' complaint.

**G.     The Requested Order Is Overbroad**

As demonstrated above, Ms. Barrameda's business endeavours are wide reaching.  There is no justification for effectively shutting down Ms. Barrameda's ability operate her businesses, especially where Plaintiffs have not established that the businesses were involved in alleged counterfeiting activities or benefitted from them.  Plaintiffs' unsubstantiated conclusions and innuendo cannot support the issuance of a freeze order.

Ms. Barrameda submits that none of her assets should be subject to a freeze order but also that the current order is overbroad.  The order permits Ms. Barrameda to withdraw only $3,000 for ordinary living expenses while residing in the Bay Area.  This amount is unreasonable considering the various expenditures required in the form of mortgage payments, utilities, insurance, vehicle, food, entertainment, clothing, etc.  The order further permits Ms. Barrameda to show legitimate business expenses.  While Ms. Barrameda does not incur normal business expenses, she actively engages in the exchange, purchase and resale of shares, which often involve large financial amounts.  Ms. Barrameda anticipates that Plaintiffs will object based on the amounts alone.  In order to take advantage of market timing, Ms. Barrameda must be permitted to transfer, buy and sell shares on a moment's notice and not be restricted.  Such restrictions would effectively halt Ms. Barrameda's business.

**IV.     CONCLUSION**

For the foregoing reasons, Plaintiff's motion must be denied.  Should the Court grant the

1  motion, Ms. Barrameda requests a modification of the terms of the order per terms proffered at the

2  time of the Order to Show Cause.

3

4  DATED:  November 4, 2015

                                    MURPHY, PEARSON, BRADLEY & FEENEY
5

6
                                    By: /s/ Peter L. Weber
7                                       Peter L. Weber
                                        Attorneys for Defendants
8                                       GLAMORA BY SADIA, SADIA BARRAMEDA

9  PLW.20990508.doc

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

---

- 15 -

**DEFENDANT SADIA BARRAMEDA'S OPPOSITION TO PLAINTIFFS' EX PARTE**
**APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE**
Case No.: 3:14-cv-05421-BLF

**CERTIFICATE OF SERVICE**

I, Hannah K. Lincecum, declare:

I am a citizen of the United States, am over the age of eighteen years, and am not a party to or interested in the within entitled cause.   My business address is 88 Kearny Street, 10th Floor, San Francisco, California 94108-5530.

On November 4, 2015, I served the following document(s) on the parties in the within action:

**DEFENDANT SADIA BARRAMEDA'S OPPOSITION TO PLAINTIFFS' EX PARTE APPLICATION FOR: 1. TEMPORARY RESTRAINING ORDER TO FREEZE DEFENDANTS' ASSETS PENDING A DETERMINATION OF LIABILITY AND DAMAGES; AND  2. ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION**

| | |
|---|---|
| ✓ | **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF):** Pursuant to controlling General Orders and LR, the foregoing document will be served by the court via NEF and hyperlink to the document.  On November 4, 2015, I checked the CM/ECF docket for this proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below: |

Anthony M. Keats
Konrad K. Gatien
Stubbs Alderton & Markiles, LLP
11453 3rd Street Promenade, Suite 300
Santa Monica, CA  90401
akeats@stubbsalderton.com
kgatien@stubbsalderton.com

Attorney For Plaintiffs
LOUIS VUITTON MALLETIER, S.A., CELINE, S.A. AND CHRISTIAN DIOR, S.A.

Monte S. Travis
Robert P. Travis
Travis & Travis
1388 Sutter Street, Suite 903
San Francisco, CA  94109
montetravis@mac.com
robert.p.travis@icloud.com

Attorney For Defendants
GLAMORA BY SADIA, SADIA BARRAMEDA AND NEW COMPENDIUM CORPORATION

I declare under penalty of perjury under the laws of the State of California that the foregoing is a true and correct statement and that this Certificate was executed on November 4, 2015.

By: */s/ Hannah K. Lincecum*
Hannah K. Lincecum

DEFENDANT SADIA BARRAMEDA'S OPPOSITION TO PLAINTIFFS' EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE
Case No.: 3:14-cv-05421-BLF