Monte S. Travis, California State Bar No. 84032
Robert P. Travis, California State Bar No. 182667
Travis & Travis
1388 Sutter Street, Suite 903
San Francisco, California 94109
Telephone: (415) 923-1200
Facsimile: (415) 673-6263
montetravis@mac.com
robert.p.travis@icloud.com

Attorneys for Defendants
Glamora by Sadia, Sadia Barrameda, and
New Compendium Corporation

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| LOUIS VUITTON MALLETEIR, S.A., et al.,<br><br>Plaintiffs,<br><br>vs.<br><br>GLAMORA BY SADIA, et al.,<br><br>Defendants. | Case No. CV 14-05421 BLF<br><br>**DEFENDANT NEW COMPENDIUM CORPORATION'S OPPOSITION TO PLAINTIFFS' EX PARTE APPLICATION FOR A TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE RE: FREEZING OF DEFENDANTS' REAL PROPERTY, FINANCIAL ACCOUNTS, AND ASSETS** |

## I.

### NEW COMPENDIUM CORPORATION JOINS ITS CO-DEFENDANTS' OPPOSITION

Defendant New Compendium Corporation ("NCC") joins the opposition of Defendants Sadia Barrameda and her business, Glamora by Sadia ("Glamora"). NCC offers the additional arguments below.

## II.

### NO GLAMORA SALES PROCEEDS WERE TRANSFERRED TO NCC

NCC is a Colorado corporation that Ms. Barrameda uses to handle her investments. (Declaration of Sadia Barrameda ("Barrameda Decl"), ¶ 15.) Plaintiffs advised the Court that they "seek to freeze only certain of Defendants' accounts and assets on the grounds that the funds therein represent illegal profits generated by Defendants through their unlawful sale and distribution of counterfeit fashion accessories." (Plaintiffs' Memorandum of Points and

Authorities ("Plaintiffs' Memo") at pg. 2, lines 8-10.)  Plaintiffs, however, have offered no evidence of any Glamora sales proceeds, let alone "profits," being transferred to NCC or deposited into any NCC account.  Ms. Barrameda denies it ever occurred. (Barrameda Decl, ¶ 15.)  This is hardly surprising: the shop had total gross sales of some $350,000 over its four-year existence and lost money every year. (Barrameda Decl, ¶¶ 10-12.)

Freezing NCC assets and accounts is therefore beyond the scope of the order that Plaintiffs themselves said they wanted, and it should not be granted.

### III.

### NCC STOCK PURCHASES REFLECT NOTHING MORE THAN ITS INVESTMENT ACTIVITY

Plaintiffs cite Bank of America account records reflecting NCC investments in various public companies, investments that were occurring long before this litigation and have continued after the complaint was filed. (Plaintiffs' Memo at pg. 5, lines 16-19.)  But using a bank account known to Plaintiffs in order to purchase publicly traded stock is hardly a recipe for surreptitious dissipation of assets.  For NCC, it is just a continuation of its business.  It reflects nothing secretive or improper, much less anything injurious to Plaintiffs' legitimate interests.

Plaintiffs charge, however, that NCC's purchases of stock "means that Defendants are acquiring these stocks by using the income related from [sic] the counterfeiting operations, funneled through NCC, which is the financial center of the operations." (Plaintiffs' Memo at pg. 5, lines 19-21.)  Again, there is no evidence of funds flowing from Glamora to NCC.  Glamora was a money loser.  Its total gross sales were nowhere near sufficient to fund the millions of dollars Plaintiffs concede the Bank of America records reflect NCC invested, and its sales of allegedly infringing products represented some smaller subset of that gross sales number.

Plaintiffs' allegations concerning NCC's stock investments have no connection to reality, and provide no basis for issuance of a freeze order against NCC or any of its assets or accounts.

### IV.

### THERE IS NO EVIDENCE THAT MS. BARRAMEDA SEEKS TO MOVE NCC OVERSEAS

Plaintiffs charge that Ms. Barrameda "sought to change the situs of NCC" by forming a British company with a similar name, New Compendium, Ltd., and that she did so "in an effort

to remove this important entity, and main benefactor of Defendants['] unlawful activities, from the jurisdiction of the U.S. Courts." (Plaintiffs' Memo at pg. 4, lines 19-23.)

Aside from the absence of evidence that NCC was the "main benefactor" (or a "benefactor" at all) of sales of allegedly infringing items, it is a mystery why Plaintiffs seem to think that formation of a new British company with a name similar to NCC's reflects an effort to shift NCC overseas or would facilitate moving any of NCC's assets outside the jurisdiction of this Court. The two companies are separate entities. As Ms. Barrameda explains in her declaration, she formed the British entity to access trading on European markets, she continues to operate NCC as always, she is not attempting to "change the situs of NCC," and in fact many of NCC's assets are in restricted shares that can only be re-sold once the restrictions expire and in limited quantities. In other words, she could not simply transfer those assets to the British company if she wanted to, which she doesn't. (Declaration of Sadia Barrameda, ¶ 16.)

Furthermore, one might reasonably assume that if Ms. Barrameda intended to move NCC's assets out of the country and to do so without attracting attention, she would have chosen a different name for the British entity than "New Compendium." There is no evidence Ms. Barrameda is attempting to move any NCC assets overseas. The formation of the so-far-inactive New Compendium, Ltd., is no reason to freeze NCC assets.

## V.

## THE BALANCE OF HARDSHIPS TIPS STRONGLY IN NCC'S FAVOR

NCC's business is to invest in and trade stocks. Market timing is critical. Although many of NCC's investments are in restricted shares and Ms. Barrameda is a long term investor (Barrameda Decl, ¶¶ 16, 21), other shares are unrestricted and if they cannot be sold before a market decline, the result will be losses. Likewise, if shares cannot be acquired at the right time, before they increase in value, potential gains will not be realized. Freezing NCC's accounts, including its brokerage account at Alpine Securities and its bank account, will therefore work a tremendous hardship on it that will be difficult or impossible to quantify. Opportunities missed are not easily evaluated, and they rarely present themselves twice.

On the other side of the ledger is the fact that NCC is not going anywhere. Its assets are

easy find, and easy to follow. As noted, a large portion of its investment portfolio is in shares of publicly held corporations.

In addition, there is an important factor that, for whatever reason, Plaintiffs chose not to bring to the Court's attention when they made their "no notice" application for a TRO: there is significant insurance. Plaintiffs were well aware of this insurance, and of the policy limits ($1 million occurrence, $2 million aggregate, two policies), when they applied ex parte for a TRO freezing Defendants' assets. (Declaration of Monte S. Travis, ¶¶ 2-5.)

NCC's business will be crippled and its damages probably unascertainable if a preliminary injunction freezing its accounts and assets issues, whereas Plaintiffs are protected by the insurance they knew of but chose not to disclose in their application papers.

## VI.

## CONCLUSION

NCC asserts that Plaintiffs have not demonstrated a likelihood of success on the merits as to NCC. Not only would Plaintiffs have to show their trademarks and copyrights were infringed, but as to NCC they would also presumably have to show an alter ego relationship or other direct involvement in the purported infringing activity. Such evidence is not part of Plaintiffs' showing.

Setting that aside, Plaintiffs have not and cannot satisfy as to NCC their burden to show irreparable harm or that the balance of hardships is in their favor. Moreover, with Glamora out of business, Plaintiffs cannot argue the public interest will be harmed without freezing NCC's assets and accounts.

NCC respectfully submits that Plaintiffs' request for a freeze order must be rejected.

Dated: November 4, 2015

MONTE S. TRAVIS
ROBERT P. TRAVIS
TRAVIS & TRAVIS

By      /s/ Monte S. Travis
Monte S. Travis
Attorneys for Defendant
New Compendium Corporation